**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**Equal Employment Opportunity Commission**

v.                                                 Civil Action No. _____

**Roark-Whitten Hospitality 2, LP d/b/a Whitten Inn,**
**Roark-Whitten Hospitality 3, LP d/b/a Whitten Inn,**
**TravelLodge, Ltd, d/b/a Whitten Inn Expo, and**
**Better Hotels, Ltd, d/b/a Whitten Inn.**

## COMPLAINT AND JURY DEMAND

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 against Roark-Whitten Hospitality 2, Roark-Whitten Hospitality 3, TravelLodge, Better Hotels (referred collectively hereinafter as "Defendant" or "Whitten Inn hotels") to correct unlawful employment practices on the basis of race, color, national origin, and retaliation. This action seeks to provide appropriate relief to Kathy Archuleta, Victor Cardenas, Martín Gutierrez, Marcos Jeantette, Michelle Martinez, Dale Quintana, Jennie Valdez, Rebecca del Palacio ("Charging Parties") and other aggrieved Hispanic and Black employees who were employed by Whitten Inn hotels located in Taos, New Mexico, Abilene, Texas, and Santee, South Carolina, and who were adversely affected by such practices. As alleged with greater particularity below, the aggrieved individuals suffered disparate treatment in the terms and

-1-

conditions of their employment as a result of Whitten Inn's discriminatory policies and practices, and were subjected to a hostile work environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Title I, Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

3. More than thirty days prior to the institution of this lawsuit, the Charging Parties filed charges of discrimination with Plaintiff Equal Employment Opportunity Commission ("EEOC" or "the Commission"), alleging violations of Title VII by Whitten Inn.

4. EEOC conducted an investigation relating to the charges of discrimination.

5. Based on its investigation, EEOC determined there was reasonable cause to believe the aggrieved individuals were subjected to unlawful discrimination in violation of Title VII.

6. By letter dated July 11, 2013, EEOC sent notice of its reasonable-cause determinations to Defendant.

7. Prior to institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. § 2000e-5(b).

8. By letter dated September 19, 2013, EEOC advised Defendant that informal conciliation efforts had been unsuccessful.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## PARTIES

10. EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

11. At all relevant times, Whitten Inn operated four hotels in three cities: one hotel in Taos, New Mexico, one hotel in Santee, South Carolina, and two hotels in Abilene, Texas.

12. At all relevant times, Whitten Inn employed more than 15 employees.

13. At all relevant times, Whitten Inn in Taos, New Mexico has been owned and operated by Roark-Whitten Hospitality 2, LP, d/b/a Whitten Inn.

14. At all relevant times, Whitten Inn in Santee, South Carolina has been owned and operated by Roark-Whitten Hospitality 3, LP, d/b/a Whitten Inn.

15. At all relevant times, Whitten Inn Expo in Abilene, Texas has been owned and operated by Abilene TravelLodge, Ltd., d/b/a Whitten Inn.

16. At all relevant times, Whitten Inn University in Abilene, Texas has been owned and operated Better Hotels, Ltd., d/b/a Whitten Inn.

17. At all relevant times, Whitten Inn has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

18. At all relevant times, the four Whitten Inn hotels comprised an integrated enterprise in the follow ways:

   a. Lawrence Whitten was the owner of all four Whitten Inn hotels;
   b. The Whitten Inn hotels all utilized the same employee handbook and personnel policies and practices;
   c. One central business office in Abilene, Texas is responsible for all accounting functions, including accounts receivable, accounts payable, payroll, recordkeeping, ordering supplies, and other financial and recordkeeping duties.
   d. The office staff in Abilene, Texas provides management support and staff training to new hotels acquired by Whitten Inn.

## GENERAL ALLEGATIONS

19. In July 2009, Defendant Whitten Inn acquired the Paragon Hotel in Taos, New Mexico, and renamed it the Whitten Inn.

20. On or about July 31, 2009, Lawrence Whitten met with the Whitten Inn employees in Taos, New Mexico.

21. Whitten observed that nearly all the hotel staff were "Spanish."

22. Whitten began the meeting by telling the employees that many, if not most of them, would not make it as Whitten employees.

23. By September 14, 2009, all but one of the Hispanic employees who were present at the meeting on July 31, 2009, had been fired or had resigned.

24. At the meeting, Whitten announced his new rule that employees were not allowed to speak Spanish in his presence.

25. Whitten explained the reason for the no-Spanish rule was that he did not understand Spanish.

26. Whitten told a manager at the Whitten Inn in Santee, South Carolina that he "would not tolerate Spanish at his property in Taos."

27. When Whitten took over the hotel in Taos, Kathy Archuleta was General Manager of the hotel.

28. Archuleta had worked at the hotel for 18 years, and had been General Manager for 10 years.

29. When Whitten took over the hotel in Taos, he required that Archuleta work seven days per week, without any days off.

30. When Whitten took over the hotel in Taos, Dale Quintana was Maintenance Manager.

31. Quintana had worked at the hotel for 21 years.

32. When Whitten took over the hotel in Taos, he required that Quintana be on-call 24 hours per day.

33. When Whitten took over the hotel in Taos, Jennie Valdez was the Assistant Housekeeping Supervisor.

34. Valdez had worked at the hotel since it first opened, approximately 24 years.

35. When Whitten took over the hotel in Taos, he set unreasonably short time periods for Valdez and the other Hispanic housekeepers to complete their duties.

36. The one Anglo housekeeper was not expected to meet the same short time standards that were imposed on the Hispanic housekeepers.

37. Whitten required all Hispanic employees at the Taos hotel to park on the far perimeter of the front parking lot.

38. Whitten allowed the one Anglo housekeeper to park in a significantly closer and more convenient parking space at the back of the hotel.

39. When Whitten took over the hotel in Taos, Victor Cardenas was employed as a Front Desk Clerk.

40. In early August 2009, Whitten told Victor Cardenas he could no longer work the front desk because of his accent, and made Cardenas work in maintenance/ housekeeping.

41. When Whitten took over the hotel in Taos, Marcos Jeantette was employed as a front desk clerk.

42. Jeantette is a light-skinned Hispanic with a non-Spanish last name.

43. In early August, 2009, Whitten told Jeantette to use the name "Mark" when he was at work.

44. Jeantette was unwilling to use an Anglicized version of his name.

45. On August 8, 2009, Whitten asked Jeantette if he was a "white boy", and Jeantette explained that his father was Hispanic.

46. The next day, on August 9, 2009, Whitten fired Jeantette.

47. When Whitten took over the hotel in Taos, Martín Gutierrez was employed as a Night Auditor.

48. Gutierrez lived with Michelle Martinez, who was employed as a Front Desk Clerk.

49. Whitten called Martinez "Buckwheat," referring to her dark skin.

50. Whitten told Gutierrez that when he was at work, Gutierrez had to pronounce his name as "Martin", without the Spanish accent on the last syllable.

51. In early August, 2009, Gutierrez was also told he should not speak with an accent.

52. On or about August 13, 2009, Gutierrez objected to Whitten's no-Spanish policy.

53. Whitten fired Gutierrez and Martinez on or about August 16, 2009.

54. On August 17, 2009, Kathy Archuleta, Dale Quintana, Jennie Valdez, and Victor Cardenas called a meeting with Whitten to object to the discriminatory policies and treatment.

55. At the end of the meeting on August 17, 2009, Mr. Whitten fired Ms. Archuleta, Mr. Quintana, Ms. Valdez, and Mr. Cardenas.

56. After the meeting on August 17, 2009, Mr. Whitten rescinded Mr. Cardenas' termination.

57. Mr. Cardenas continued to work in maintenance/housekeeping for about a month.

58. Victor Cardenas resigned his employment on September 14, 2009.

59. During the meeting on August 17, 2009, Mr. Whitten advised Ms. Valdez that she could re-apply.

60. Ms. Valdez did not re-apply.

61. When Whitten took over the hotel in Taos, Rebecca del Palacio was employed as Executive Housekeeper.

62. Del Palacio had worked for the hotel for over eight years.

63. On August 30, 2009, Del Palacio was told her wages would be reduced.

64. Del Palacio resigned, rather than work for reduced wages.

65. Whitten's discriminatory policies and practices were not limited to the Taos hotel.

66.     The employee handbook in effect at all four Whitten Inn hotels, includes a hairstyle policy prohibiting "braids, extensions, and wigs", and requires hair to be "styled".

67.     Whitten required Hispanic and Black employees at other locations to change or Anglicize their names, including the following: Rogelio to Roger; Helena to Lena; Eirineo to Eddie; Roberto to Robert; Emilio to Mike; Leticia to Tisha; Katina to Tina; Latoya to Toya; Andrea to Andi; and Jumeka to Meka.

68.     Emilio Duran was told to go by "Mike" because Mr. Whitten had a hard time pronouncing ethnic names.

69.     Roberto (LNU) was told to go by "Robert" because his name sounded "too ethnic."

70.     Anglo employees were allowed to use the pool, but minority employees were not.

71.     Anglo employees were allowed to bring their children to work, but minority employees were not allowed to do the same.

72.     Whitten paid several Hispanic employees their final checks in the form of rolled pennies.

73.     Whitten made offensive racial and ethnic comments in the workplace, including for example:

    a. Whitten referred to Hispanic housekeepers who couldn't speak English as "wetbacks."

    b. Whitten referred to African Americans, including a maintenance man, as "niggers."

    c. After firing several Hispanic housekeepers, Whitten said that he was "glad to get rid of all the Mexicans."

-9-

    d. Whitten called a Hispanic employee as "Paco" or "Sancho"; the employee does not answer to either name.

    e. Whitten called Michelle Martinez "Buckwheat", referring to her dark skin color;

74. Whitten preferred to hire Anglo employees.

75. On at least one occasion, Whitten discarded applications based only on the applicant's apparent race or ethnicity.

76. On occasion, Whitten told hotel employees not to rent rooms to Black and Hispanic patrons.

## FIRST CLAIM FOR RELIEF
### [Title VII – Disparate Treatment Hostile Work Environment]

77. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

78. Whitten Inn discriminated against Charging Parties and a class of Hispanic and Black employees in violation of Section 703(1) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment based on race, color, and/or national origin.

79. The hostile work environment includes, without limitation, all of the following:

    a. The no-Spanish policy;

    b. The practice of changing ethnic-sounding names;

    c. The hairstyle policy;

    d. Offensive racial and ethnic comments in the workplace;

    e. Demotion and ridicule based on employees' accents;

    f. More onerous work standards imposed on Black and Hispanic employees, than on Anglo employees;

      g.      Allowing certain privileges to Anglo employees, while denying the same privileges to Black and Hispanic employees;

      h.      Directing employees not to rent rooms to certain customers who were Black or Hispanic;

      i.      Terminating Hispanic employees and paying them in pennies;

      j.      Forcing resignations of Hispanic employees;

      k.      Retaliation against employees who complained about the discriminatory policies and practices.

80.    The discriminatory policies and practices were sufficiently severe or pervasive to alter the terms and conditions of employment of Hispanic and Black employees.

81.    As the owner of the Whitten Inn, Lawrence Whitten was an alter ego for Whitten Inn.

82.    Defendant is strictly liable for the hostile work environment based on race, color, and/or national origin.

83.    The unlawful employment practices described above were intentional.

84.    The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of the aggrieved Hispanic and Black employees.

85.    As a result of the events and actions described above, the aggrieved Hispanic and Black employees were deprived of equal employment opportunities, suffered emotional distress, and were otherwise adversely affected because of their national origin, race, and/or color.

## SECOND CLAIM FOR RELIEF
### [Title VII - Disparate Treatment in the Terms and Conditions of Employment]

86. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

87. Since at least July 2009, Whitten Inn has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by affording disparate treatment in the terms and conditions of employment to Hispanic and Black employees based on national origin, race, and/or color. These terms and conditions include, but are not limited to, those described in paragraph 79 above.

88. The unlawful employment practices described above were intentional.

89. The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of the aggrieved Hispanic and Black employees.

90. As a result of the events and actions described above, the aggrieved Hispanic and Black employees were deprived of equal employment opportunities, suffered emotional distress, and were otherwise adversely affected because of their national origin, race, and/or color.

## THIRD CLAIM FOR RELIEF
### [Title VII - Retaliation]

91. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

92. Since at least July 2009, Whitten Inn has engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by subjecting Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Jennie Valdez, and other aggrieved

employees who engaged in, or associated with someone who engaged in conduct protected under Title VII, to adverse employment actions in retaliation for engaging in protected opposition to discriminatory policies and practices.

93. Defendant Whitten engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by firing Charging Party Michelle Martinez, based on her relationship with Martín Gutierrez.

94. Defendant's adverse actions described above occurred in a matter of minutes or several days after the employees' protected conduct.

95. The effect of Defendant Whitten Inn's unlawful retaliation has been to deprive Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Jennie Valdez, Michelle Martinez, and other aggrieved employees of equal employment opportunities and otherwise adversely affect their status as employees because they engaged in protected opposition to Defendant's discriminatory policies and procedures, or associated with someone who engaged in such protected conduct.

96. The unlawful employment practices complained of were and are intentional.

97. The unlawful employment practices complained of were and are done with malice or with reckless indifference to the federally protected rights of Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Jennie Valdez, Michelle Martinez and other aggrieved employees who engaged in protected opposition under Title VII, or associated with someone who engaged in protected conduct.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Whitten Inn, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of national origin, race, color, and/or retaliation, or which creates, facilitates, condones, tolerates, and/or encourages discriminatory language policies, name-changing policies, or hairstyle policies, or disparate treatment in the terms and conditions of employment, including a hostile work environment, and/or retaliation.

B. Order Whitten Inn to institute and carry out policies, practices, and programs which provide equal employment opportunities for Hispanic and Black applicants and employees, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Whitten Inn to make whole Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Jennie Valdez, Michelle Martinez, Rebecca del Palacio, and other aggrieved Hispanic and Black employees and other employees who suffered retaliation, by providing appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to: elimination of the restrictive-language policy or rule, elimination of the restrictive hairstyle policy, ending the practice of requiring employees with ethnic-sounding names to change their names or use an Anglicized version of the employee's name; removal of discriminatory discipline and/or termination from personnel files; and reinstatement with all attendant rights and benefits, or, in the alternative, an appropriate award of front pay.

   D. Order Whitten Inn to make whole Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Dale Quintana, Jennie Valdez, Victor Cardenas, Michelle Martinez, Rebecca del Palacio, and other aggrieved Hispanic and Black employees and other employees who suffered retaliation, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to relocation expenses, job search expenses, and medical expenses not covered by Whitten Inn's employee benefit plan(s), in amounts to be determined at trial.

   E. Order Whitten Inn to make whole Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Dale Quintana, Jennie Valdez, Victor Cardenas, Michelle Martinez, Rebecca del Palacio, and other aggrieved Hispanic and Black employees and other employees who suffered retaliation, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

   F. Order Whitten Inn to pay Charging Parties Marcos Jeantette, Martín Gutierrez, Kathy Archuleta, Dale Quintana, Jennie Valdez, Victor Cardenas, Michelle Martinez, Rebecca del Palacio, and other aggrieved Hispanic and Black employees and other employees who suffered retaliation, punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

   G. Grant such other and further relief as the Court deems just, equitable, necessary, and proper in the public interest.

   H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint for which a jury trial is permitted.

Dated: September 30, 14

        P. DAVID LOPEZ
        General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT OPPORTUNITY
          COMMISSION
        131 M Street, NE
        Washington, D.C.  20507

        MARY JO O'NEILL
        Regional Attorney
        EQUAL EMPLOYMENT OPPORTUNITY
          COMMISSION
        Phoenix District Office
        3300 N. Central Ave., Suite 690
        Phoenix, Arizona  85012

        RITA BYRNES KITTLE
        Supervisory Trial Attorney

        **/s/  Christina Vigil**
        Senior Trial Attorney
        EQUAL EMPLOYMENT OPPORTUNITY
          COMMISSION
        Albuquerque Area  Field Office
        505 Marquette Avenue, NW, Suite 900
        Albuquerque, NM 87102
        **LEAD ATTORNEY TO BE NOTICED**

**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys.  Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**