**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**

        **Plaintiff,**

**v.**                                                  **Case No. 1:14-cv-00884-MCA-KK**

**ROARK-WHITTEN HOSPITALITY**
**2, LP dba Whitten Inn, ROARK-**
**WHITTEN HOSPITALITY 3, LP dba**
**Whitten Inn, TRAVELODGE, LTD**
**dba Whitten Inn Expo, BETTER**
**HOTELS, LTD dba Whitten Inn, and**
**XYZ Company(s)/Corporation(s),**

        **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on *Defendants[] Roark-Whitten Hospitality 3, LP, Travellodge, LTD, and Better Hotels, LTD's Motion to Dismiss for Lack of Personal Jurisdiction*. [Doc. 12]  The Court, having considered the submissions, the relevant law, and otherwise being fully advised in the premises, hereby **GRANTS** the Motion.

**BACKGROUND**

    *Factual Background*

    This case arises out of an EEOC investigation into alleged discriminatory employment practices at the Whitten Inn Taos (Defendant Roark-Whitten Hospitality 2, LP), which was located in Taos, New Mexico.  The EEOC's action seeks to correct unlawful employment practices and provide relief to eight named charging parties who

1

were employed by Whitten Inn Taos.  [Doc. 4, p. 1]  It also seeks to provide relief to "other aggrieved Hispanic and Black employees who were employed by Whitten Inn hotels located in Taos, New Mexico, Abilene, Texas, and Santee, South Carolina, [] who were adversely affected by such practices." [Doc. 4 at 1]  The complaint states that "[t]he employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico."  [Doc. 4 ¶ 2]

Whitten Inn Taos was one of four hotels operating under the name Whitten Inn. The EEOC brought this action pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, alleging that Defendants engaged in unlawful employment practices at the hotel in Taos and at each of the other hotels.  [Doc. 4, ¶ 1] In the complaint, The EEOC refers collectively to "Whitten Inn hotels" or simply "Whitten Inn."  [Doc. 4, p. 1 & ¶ 11]  However, each hotel is an individual entity, and individually named as a defendant.

Defendant Roark-Whitten Hospitality 2, LP owned and operated Whitten Inn Taos.  [Doc. 4, ¶ 13]  Defendant Roark-Whitten Hospitality 3, LP owned and operated a Whitten Inn in Santee, South Carolina (Whitten Inn Santee).  [Doc. 4 ¶ 14]  Defendant Travellodge, Ltd owned and operated Whitten Inn Expo in Abilene, Texas (Whitten Inn Expo). [Doc. 4 ¶ 15] Defendant Better Hotels, Ltd. owned and operated Whitten Inn University, also in Abilene, Texas (Whitten Inn University).  [Doc. 4 ¶ 16]  The Court refers to the three out-of-state hotel Defendants collectively as the non-Taos Defendants.

The EEOC did not sue the parent corporations of the four Whitten hotels.  All of the Whitten hotels are owned by corporations of which Larry Whitten is the president.

2

Eastside Hotel, Inc., is a Texas corporation and the general partner of Defendants Roark-Whitten Hospitality 2 (Whitten Inn Taos), Roark-Whitten Hospitality 3 (Whitten Inn Santee) and Travellodge (Whitten Inn Expo).  [Docs. 12-1, p. 2; 12-2, p. 2]   Larry Whitten owns 99% of the limited partner interest in Eastside Hotels, Inc.  [Doc. 24-1 at 2]  BTAFWP, Inc., is the general partner of Defendant Better Hotels (Whitten Inn University).  [Doc. 12-3, p. 2]

The majority of allegations in the Complaint arise from Larry Whitten's actions and implementation of policies in Taos, New Mexico after Roark-Whitten Hospitality 2 began operating the Whitten Inn Taos in July of 2009.  [Doc. 4, ¶ 30]  For example, Larry Whitten allegedly implemented a no-Spanish policy and required Hispanic employees to Anglicize their names.   [*See* Doc. 4 ¶¶ 35-36, 54, 61]  Mr. Whitten allegedly treated Hispanic employees differently from Anglo employees by: setting shorter and unreasonable time periods for Hispanic employees to complete their duties; requiring Hispanic employees to park farther away from the hotel; not allowing minority employees to bring their children to work but allowing Anglo employees to do so; and not allowing minority employees to swim in the pool but allowing Anglo employees to do so.  [Doc. 4, ¶¶ 46-49, 81-82]  Mr. Whitten told an employee he could no longer work at the front desk because of his accent and reassigned the employee to maintenance or housekeeping.  [Doc. 4, ¶ 51]  Mr. Whitten used racial slurs about employees.  [Doc. 4, ¶¶ 60, 84]  Five different employees who objected to allegedly discriminatory policies and practices were terminated within three days of their complaints (though one was rehired and worked for approximately a month before resigning).  [Doc. 4, ¶¶ 63-68]  Mr.

Whitten "paid several Hispanic employees their final checks in the form of rolled pennies."  [Doc. 4, ¶ 83]  Between July 31, 2009 and September 14, 2009, all but one Hispanic employee of Whitten Inn Taos were fired or resigned.  [Doc. 4, ¶ 34]

The Complaint also alleges that "Whitten's discriminatory policies and practices were not limited to the Taos Hotel."  [Doc. 4 ¶ 76]  The EEOC alleges that "[t]he employee handbook in effect at all four Whitten Inn hotels, includes a hairstyle policy prohibiting 'braids, extensions, and wigs', and requires hair to be styled."  [Doc. 4 ¶ 77] According to the EEOC, "Whitten required Hispanic and Black employees at other locations to change or Anglicize their names" and provides examples.  [Doc. 4 ¶¶ 78-80]

### Procedural Background

Eight employees (the "Charging Parties") of the Whitten Inn Taos filed charges with the EEOC.  [Doc. 4, p. 1, p. 2 ¶ 3]  Subsequently, and after attempting to conciliate, the EEOC brought this lawsuit alleging:   I) "Disparate Treatment Hostile Work Environment;" II) "Disparate Treatment in the Terms and Conditions of Employment;" and III) Retaliation.[1]   [Doc. 4, pp. 12-16]  As set forth above, the EEOC brought the claim against not only the Whitten Inn Taos but also the Whitten Inn Expo and Whitten Inn University (located in Texas), and Whitten Inn Santee (located in South Carolina).[2]

---

[1] The complaint alleges that the action "is authorized and instituted pursuant to Sections 706(f)(1) and (3) of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.SC. §§ 2000e-5(f)(1) and (3), and Title I Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a."  [Doc. 4 ¶ 1]

[2]   The EEOC also sues an unknown company designated as the "XYZ Company/Corporation," that purchased the Whitten Inn Taos subsequent to the conduct alleged by the EEOC.  [Doc. 4, pp. 1-2]  The XYZ Company is not a party to the Motion to Dismiss.

The non-Taos Defendants move to dismiss, contending that the Court lacks personal jurisdiction over them.  [Doc. 12, p. 1]  They state that "all of the Defendants are entities organized and operating under the laws of Texas, and that the non-Taos Defendants do not have any contacts or business in New Mexico."  [Doc. 12, p. 2]  In support of their assertions, the non-Taos Defendants submit declarations of Larry Whitten as president of the general partner of each non-Taos Defendant.  [Docs. 12-1, 12-2, 12-3]  After the non-Taos Defendants filed their motion to dismiss, the parties agreed to engage in limited discovery on the personal jurisdiction issue.  [Doc. 22, p. 2]  Subsequently, the EEOC responded, arguing that the Court has both specific and general jurisdiction over the non-Taos Defendants.  [Doc. 22, p. 24]  It asserted that "[a]t all relevant times, the non-Taos Defendants had sufficient minimum contacts with New Mexico and with Whitten Inn Taos by providing employees, management, equipment, operational and/or other services to the Whitten Inn Taos."  [Doc. 22, p. 2]  It provided the Court with a "Statement of Facts Supporting Jurisdiction" [Doc. 22, p. 3-9] and attached 13 exhibits purporting to support of those facts.  [Doc. 24-1 to 24-13]

The EEOC's sets forth certain facts to support jurisdiction.  The EEOC states that "[t]he three non-Taos Defendants and the Whitten Inn Taos shared the same corporate officers." [Doc. 22, ¶ 4]  All of the hotels used the same personnel handbook, and referred to all employees as being employed by "Whitten Management," collectively referred to in the handbook as "Whitten." [Doc. 22, ¶¶ 7-8]  The "Abilene Business Office" performed the same accounting duties for all hotels, including "accounts receivables, payables, payroll, checkbook recordkeeping, ordering supplies, and any other

5

financial or recordkeeping duties." [Doc. 22, ¶ 11]  "Larry Whitten and members of the Abilene Business Office traveled to the Whitten Inn Taos to train the existing staff." [Doc. 22, ¶ 13]  The Abilene Business Office was physically located at the Whitten Inn Expo in Texas, and thus, the EEOC "presumed" these staff from the Abilene Business Office to be employed by Whitten Expo Hotel. [Doc. 22, ¶ 11]  One of these employees, Karen Dickerson, worked at the Whitten Inn Taos from at least August 1 through September 4, 2009.  [Doc. 22, ¶ 17]  Ms. Dickerson assisted with:  "the hiring and training of staff, including handing out employment applications, handing out employee handbooks, tax papers, [] reviewing and signing acknowledgement of the personnel manual[,] . . . obtain[ing] and verify[ing] the I-9 Forms for employees of Whitten Inn Taos[,] . . . train[ing] the Whitten Inn Taos hotel clerks on Whitten procedures and report[ing] any observed personnel concerns directly to Larry Whitten."  [Doc. 22, ¶¶ 17-20]  At least one other employee from Whitten Expo "was loaned to Whitten Inn Taos" for approximately three months to train employees.  [Doc. 22, ¶ 21]  Other employees from Whitten Expo and the other non-Taos Defendants were loaned to Whitten Inn Taos to perform work such as maintenance and serving as a breakfast attendant.  [Doc. 22, ¶¶ 22-27]  The Whitten Inn Taos paid these employees out of its bank account while they performed work in Taos, however, the non-Taos Defendants remained the employers of record for the loaned employees.  [Doc. 22, ¶ 28]  The non-Taos Defendants paid bills or provided loans for the Whitten Inn Taos.  [Doc. 22, ¶ 33]  All of the hotels shared a common website and employees were "trained to identify themselves as a Whitten Inn hotel, [and] to specify the applicable hotel location." [Doc. 22, ¶¶ 6, 33]

6

The EEOC urges the Court to find that these actions show that "each non-Taos Defendant transacted business in New Mexico and availed themselves of the privileges of New Mexico," and that the activities "demonstrate[] interrelatedness to support EEOC's integrated enterprise theory." [Doc. 22, p. 17]  Accordingly, the EEOC asks this Court to find that personal jurisdiction over the non-Taos Defendants exists.

**ANALYSIS**

### Standard for determining 12(b)(2) Motions to Dismiss

The District Court has discretion to resolve a motion to dismiss for lack personal jurisdiction "in a variety of ways-including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  When a Court rules on a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Under this standard, the plaintiff bears the burden of "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.*

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits [or other written materials], all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (internal quotation marks and citations omitted).  "[I]n the preliminary stages of litigation, the plaintiff's burden is

light." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).

"In order to defeat a prima facie showing of jurisdiction, the defendant must demonstrate

that the presence of some other considerations would render jurisdiction unreasonable."

*TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287 (10th Cir.

2007) (internal quotation marks and citation omitted).  Even where the Court, at an initial

stage, finds personal jurisdiction, this determination can be "reviewed again at

subsequent stages in the trial court proceedings as evidence accumulates." *Dudnikov*,

514 F.3d at 1069 n.3.

Applying this legal framework, the Court resolved all factual disputes in favor of

the EEOC and set out those facts above for purposes of this opinion.

### *Personal Jurisdiction*

"Personal jurisdiction is established by the laws of the forum state and must

comport with constitutional due process."  *Fireman's Fund Ins. Co. v. Thyssen Mining*

*Constr. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012).   New Mexico has

"construed the state long-arm statute as being coextensive with the requirements of due

process."[3] *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 8, 304 N.M. 18, 304 P.3d

18 (internal quotation marks and citation omitted); *accord Fireman's Fund*, 703 F.3d at

492-93.  "[A] State may authorize its courts to exercise personal jurisdiction over an out-

---

[3] New Mexico's long-arm statute, N.M.S.A. 1978, § 38-1-16 (1971), states, in relevant part:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state[.]

of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (internal quotation marks, alterations, and citations omitted).  Those contacts can support either specific or general jurisdiction.  *See id.* at 754-55.

### General Jurisdiction

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State."  *Id.* at 754 (internal quotation marks and citations omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984) (discussing whether contacts were sufficiently continuous and systematic to apply general personal jurisdiction).  For a corporation, "the place of incorporation and the principal place of business are paradigm bases for general jurisdiction." *Daimler,* 134 S.Ct. at 760 (internal quotation marks, citations, ellipses and alterations omitted).  "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims."  *Id.* General jurisdiction exists where the continuous and systematic contacts with the forum state "'[are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'"  *Id.* at 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).  Thus, general jurisdiction "does not require that the claim be related to [the continuous and systematic] contacts" with the forum state.  *Dudnikov*, 514 F.3d at 1078.

9

The EEOC submits that the following facts establish general jurisdiction over the non-Taos Defendants:   the "Business Office staff at Whitten Expo continuously maintained control over accounting functions for Whitten Inn Taos"; "work orders for Whitten Inn Taos were created by Whitten Expo"; "supplies for the Whitten Inn Taos were obtained by Whitten Expo and brought to Taos"; and all three non-Taos defendants sent employees to New Mexico to work at the Whitten Inn Taos.   [Doc. 22, p. 20] Looking at all of these facts together and in the light most favorable to the EEOC, the Court concludes that they are insufficient to establish the substantial, continuous and systematic contacts that warrant a conclusion that any of the non-Taos Defendants were "at home" in New Mexico.

First, considering Whitten Expo, and assuming the staff of the Business Office were staff of Whitten Expo, the Court concludes the facts in this case are similar to those which were insufficient to establish general jurisdiction in *Helicopteros*, 466 U.S. at 416. In *Helicopteros*, the Court concluded that there was not general personal jurisdiction in Texas over a foreign corporation called Helicol where:   Helicol did not have place of business in Texas; the CEO of Helicol traveled to Texas to negotiate a contract; Helicol bought helicopter parts from a Texas business for substantial sums' and Helicol sent personnel to Texas for training.  *Id.* at 416-18.  Further, in *Benton v. Cameco Corp.*, 375 F.3d 1070 (10th Cir. 2004), our Tenth Circuit concluded that the following acts were insufficient to establish general jurisdiction in Colorado over a foreign company called Cameco:   Cameco had a wholly-owned subsidy in Colorado; Cameco entered into a memorandum of understanding (MOU) with a Colorado resident; Cameco would have

partially performed duties under the MOU in Colorado and made payments to the Colorado resident in Colorado; Cameco sent employees to Colorado to conduct a due diligence review of the Colorado resident's business; Cameco sent "significant correspondence" to the Colorado resident in Colorado; Cameco allegedly interfered with the Colorado resident's business relationships, thus committing a tort which caused harm in Colorado; and Cameco engaged in two dozen transactions in Colorado. *Id.* at 1076, 1080-81.

Here, Whitten Expo sent as many as six employees to Whitten Inn Taos to assist in the transition during the change in ownership, to train employees, and to perform work. [Doc. 22, ¶¶ 16-23]  Those employees stayed at Whitten Inn Taos for up to 3 months. [Doc. 22, ¶ 21]   Further, Whitten Expo created work orders for Whitten Inn Taos, obtained supplies and brought them to Whitten Inn Taos, and "continuously maintained control over accounting functions for Whitten Inn Taos."  [Doc. 22, ¶¶ 29-31 and p. 20] Nonetheless, as illustrated by the controlling cases of *Helicopteros* and *Benton*, these contacts are insufficient to consider Whitten Expo "at home" in New Mexico, because they do not amount to Whitten Expo's principal place of business being in New Mexico nor was Whitten Expo incorporated in New Mexico.

As to Whitten University and Whitten Inn Santee, these out-of-state hotels also sent a few employees to Whitten Inn Taos to work for up to two months.  [Doc. 22, ¶¶ 23-27]  These contacts with New Mexico being even less substantial than those of Whitten Expo, the Court concludes that general personal jurisdiction over these

Defendants is also lacking.[4]   In sum, the Court concludes that general personal jurisdiction over the non-Taos Defendants is lacking in this case.

### Specific Jurisdiction

"[A] court may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"   *OMI Holdings, Inc.*, 149 F.3d at 1090-91 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (emphasis omitted).   The test to determine specific jurisdiction can be broken into two parts.   The Court first considers whether the "corporation purposefully avail[ed] itself of the privilege of conducting activities within the forum State . . . [such that] it has clear notice that it is subject to suit there."   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal quotation marks and citation omitted). In this part of the test, the Court's focus is on whether the transaction at issue amounts to a purposeful decision by Defendants "to avail

---

[4] Though the EEOC relies on "[f]acts relevant to a theory of integrated enterprise liability" generally [Doc. 22, p. 12], the EEOC does not expressly rely on the integrated enterprise theory in making its argument that general jurisdiction exists.  [Doc. 22, pp. 20-21]  To the extent that the EEOC asks this Court to find that the non-Taos Defendants are at home in New Mexico because of their interrelated relationship with the Whitten Inn Taos, the Supreme Court recently rejected a similar argument.  In *Daimler*, 134 S.Ct. at 760, the Court required a showing that the defendant at issue (there the parent corporation) was at home in the forum state:  "Even if we were to assume that MBUSA [the subsidiary] is at home in California, and further to assume MBUSA's contacts are imputable to Daimler [the parent corporation], there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there."   *Id.* Likewise, in this case, the Court looks at each non-Taos Defendant's contacts with New Mexico, and determines that they are not at home in New Mexico.

themselves of the benefits and protections of New Mexico law." *FDIC v. Hiatt*, 1994-NMSC-044, ¶ 9, 117 N.M. 461, 872 P.2d 879.   The contacts the Court considers in determining whether the defendant has minimum contacts with the forum state vary depending on the type of claim at issue. *See Burger King*, 471 U.S. at 473.  For example, in tort cases, the Court looks at whether there was "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state" *Dudnikov*, 514 F.3d at 1072, while in contract cases the Court considers whether the defendant "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Burger King*, 471 U.S. at 473 (internal quotation marks and citations omitted).

Second, in order for specific jurisdiction to exist, the "injuries must arise out of defendants' contacts with the forum jurisdiction." *Dudnikov*, 514 F.3d at 1078 (internal quotation marks omitted).  "[T]he rationale for the relatedness inquiry [is] to allow a defendant to anticipate his jurisdictional exposure based on his own actions." *Id.* at 1079. Our Tenth Circuit has determined that the "arising from" element is a requirement that the injury be caused by the actions of the Defendant directed at the forum state, however, as between the but-for test or the proximate cause test, our Tenth Circuit has not chosen which causation test to apply. *Id.*

Even where there are sufficient minimum contacts and the harm arises from those contacts, the forum state's exercise of personal jurisdiction over the defendant must be fair and "reasonable in light of the circumstances surrounding the case." *OMI Holdings, Inc.*, 149 F.3d at 1091 (internal quotation marks and citation omitted).   The fairness and

reasonableness inquiry entails consideration of several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 476-77 (internal quotation marks and citations omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477.

This case is not premised on a tort or a contract, but is premised *instead* on alleged discrimination under Title VII. The parties have not cited, nor has the Court found, case authority defining the relevant contacts when considering whether a defendant, as an employer, has minimum contacts with the forum state under Title VII (or similar civil rights statutes) to establish specific jurisdiction. The Court believes that such a test should consider the nature of a Title VII claim, just as the tests for personal jurisdiction for other claims (such as torts, contracts and products liability) consider the nature of those claims and the reasonable expectations based on related contacts with the forum state. *See Shaffer v. Heiter*, 433 U.S. 186, 204 (1977) (stating that minimum contacts focuses upon "the relationship among the defendant, the forum, and the litigation"); *International Shoe*, 326 U.S. at 319 ("Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."). Accordingly, contacts by

an employer with a forum state from which an employer could reasonably expect to be haled into the forum court for a violation of Title VII include whether the defendant employs any employee in the forum state and whether the defendant engaged in an employment action, the effect of which would occur in the forum state.  Applying these considerations here, the Court considers whether the alleged harm arose from an employment relationship between the non-Taos Defendants or an allegedly unlawful employment action by the non-Taos Defendants directed at employees in New Mexico.

As an initial matter, to the extent that the EEOC is attempting to sue the non-Taos Defendants in New Mexico for allegedly unlawful employment actions the non-Taos Defendants took against employees in Texas or South Carolina, the EEOC fails to establish that litigation arose from activities directed at New Mexico.  Thus, the Court will only consider the EEOC's argument with regard to individuals employed or allegedly harmed in New Mexico.

The EEOC devotes much of its argument to the integrated enterprise theory, also called the single employer test, in order to show that "each non-Taos Defendant transacted business in New Mexico and availed themselves (*sic*) of the privileges of New Mexico."  [Doc. 22, p. 17]  As the EEOC recognizes, in *Walker v. THI of New Mexico at Hobbs Center,* 801 F.Supp. 2d 1128, 1154 (D.N.M. 2011), the Honorable James Browning declined to apply the integrated enterprise theory to allow a New Mexico employee to establish specific jurisdiction over the out-of-state parent corporations of her employer.  Judge Browning stated:

> [T]he single integrated-enterprise theory derives from federal law regarding Title VII, a different body of law than law regarding minimum contacts. The purpose of the single integrated-enterprise theory is to determine whether two entities constitute a single employer for purposes of Title VII liability; the minimum-contacts test makes certain that persons are not drug into the courts of far-away jurisdictions in which they did not envision being involved and in which the existence of jurisdiction would be fundamentally unfair. . . . The laws on which the suit are based are irrelevant because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making the contacts elements of a cause of action, since this would violate due process.

*Id.* at 1153-54 (internal quotation marks, citations and brackets omitted); *see also EEOC v. Bass Pro Outdoor World, LLC*, 884 F.Supp. 2d 499, 525-56 (S.D. Tex. 2012) (adopting *Walker's* reasoning in concluding that the single employer test should not be used to determine whether a court can exercise personal jurisdiction over a defendant).

This Court, too, declines to apply the single employer or integrated enterprise test to find specific jurisdiction in this case over the non-Taos Defendants.  However, this Court's reasoning differs slightly from the reasoning in *Walker*,[5] and turns on a key feature of the single employer test.  "Unlike the joint employer test, which focuses on the relationship between an employee and its two potential employers, the single employer test focuses on the relationship between the potential employers themselves."[6]  *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1227 (10th Cir. 2014).

---

[5] Specifically, as discussed above, the Court concludes that the elements of a cause of action necessarily inform which contacts with the state the Court should be consider in determining whether personal jurisdiction exists.  *See Burger King*, 471 U.S. at 473 (discussing the various tests for finding minimum contacts based on the differing causes of action of products liability, tort and contract).

[6] Where there are joint employers (a theory not advanced by the EEOC), there are significant contacts between both employers and the employee.  "[T]wo entities are considered joint employers if they share or co-determine those matters governing the

16

> Courts applying the single-employer test generally weigh four factors: (1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. . . . Courts generally consider the third factor—centralized control of labor relations—to be the most important.

*Bristol v. Board of County Commissioners of County of Clear Creek*, 312 F.3d 1213, 1220 (10th Cir. 2002). The single employer or integrated enterprise test allows a finding of liability based on the relationship between the purported employers to each other, rather than each purported employer's relationship with the employee. *Knitter*, 758 F.3d at 1227.

To the extent that the single employer test would allow the Court to impute the contacts between a purported (in-state) employer and an in-state employee to an out-of-state employer, such a holding is inconsistent with controlling due process jurisprudence.[7] In the context of this case, the Court concludes that application of the

---

essential terms and conditions of employment [and] . . . both exercise significant control over the same employees." *Knitter*, 758 F.3d at 1226 (internal quotation marks and citations omitted).

[7] On the other hand if the employee makes a showing that corporate separateness should be disregarded, for example, by operation of the alter-ego theory or applying agency law, then the single employer test may become informative. *See Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358, 1363-64 (10th Cir. 1974) (considering the alter ego doctrine in the context of establishing personal jurisdiction); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005) (concluding that personal jurisdiction existed over the foreign parent company where the parent company exercised "sufficient control" over the in-state subsidiary); *Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 33, 138 N.M. 607, 124 P.3d 585 (Kennedy, J., plurality) (applying the alter-ego theory to find personal jurisdiction over an out-of-state corporation where the "Plaintiffs made a prima facie case that [the out-of-state parent company] did not simply own [the in-state subsidiary]; it completely controlled it to the point where [the subsidiary] existed as little more than an instrument to serve [the parent company's] real estate interests"). In this case, however, the EEOC makes no mention of, nor does it assert, this alter-ego theory or agency case law in either its Complaint or its brief.

single employer or integrated enterprise test would violate our Supreme Court's counseling that "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Imputing specific jurisdiction over sister (or, more aptly, cousin) corporations based on their relationship with an in-state corporation on the facts pleaded and arguments advanced here would establish a new ground for finding personal jurisdiction within this Circuit as to when it is appropriate to disregard the existence of separate corporate entities.   *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary. . . .  Each defendant's contacts with the forum State must be assessed individually."); *see also Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir. 1974) (considering the alter ego doctrine and holding that for the forum state to exercise personal jurisdiction over the parent corporation, the parent corporation must "dominat[e] . . . the day to day business decisions of [the subsidiary] and [must show] a disregard of the corporate entity of [the subsidiary]"); *Benton*, 375 F.3d at 1081 ("[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.").

　　　Finally, recognizing that the court in *Walker* opted not to employ the integrated enterprise or single employer *test* to decide personal jurisdiction," the EEOC argues that

"Judge Browning acknowledged that courts may consider *facts* that might later be relevant in a single integrated employer analysis to evaluate whether personal jurisdiction exists." [Doc. 22, p. 13]  The EEOC thus argues that the facts related to the integrated enterprise theory also establish that each Defendant here transacted business in New Mexico.  [Doc. 22, p. 17]  While the Court agrees that each non-Taos Defendant arguably transacted business in New Mexico, there is no evidence proffered that the alleged harm arose from those contacts with New Mexico.

The EEOC alleges that certain business functions, particularly accounting functions, were conducted centrally at the Business Office in Texas.  Further, the EEOC alleges that the non-Taos Defendants sent employees to Taos to work.  Some of those employees were employees of the Business Office or Whitten Expo, who conducted training.  One Business Office or Whitten Expo employee trained employees on the practices and policies of Whitten Inn hotels, handled I-9 paperwork related to hired employees, and reported personnel issues to Mr. Whitten.  Other out-of-state employees trained the Whitten Taos staff or worked at the Whitten Inn Taos.  All of the hotel Defendants used the same personnel manual.  Even so, the Title VII violations do not arise from any of these actions by the non-Taos Defendants.  The non-Taos Defendants' actions did not create an employment relationship between the Taos employees and the non-Taos Defendants, nor do they establish that the non-Taos Defendants took any adverse employment action (such as establishing racially biased policies, treating employees different based on race or terminating employees based on race) in New Mexico.  The EEOC does not draw the necessary causal connection (or submit facts

19

which would support such a connection) that the non-Taos Defendant employees (as agents for the non-Taos Defendants) caused the harm to employees who were in New Mexico.  As discussed earlier, most of the alleged harm was conducted by Mr. Whitten, who was the president of the corporation which owned the Whitten Inn Taos (and presumably acting in that capacity rather than in his capacity related to a non-Taos Defendant).  Thus, considering all of the "[f]acts relevant to a theory of integrated enterprise liability" without applying the "integrated enterprise or single-employer test," as the EEOC requests [Doc. 22, pp. 12-13], specific jurisdiction is lacking because neither this lawsuit nor the harm alleged arose from the contacts of the non-Taos Defendants with New Mexico.

Because the Court concludes that the harm did not arise from the non-Taos Defendants' contacts with New Mexico, the Court will not analyze whether it would be fair and reasonable for this forum to exercise personal jurisdiction over the non-Taos Defendants.  The Court concludes that personal jurisdiction is lacking over all non-Taos Defendants.

**CONCLUSION**

For the reasons set forth above, the Court hereby **GRANTS** *Defendants[] Roark-Whitten Hospitality 3, LP, Travellodge, Ltd, and Better Hotels, LTD's Motion to Dismiss for Lack of Personal Jurisdiction.*  [Doc. 12]

**IT IS THEREFORE ORDERED** that this matter is dismissed as to Defendants ROARK WHITTEN HOSPITALITY 3 LP; TRAVELLODGE, LTD; and BETTER HOTELS, LTD.

**SO ORDERED** this 31st  day of March, 2016 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court