IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

v.                                                                                          No. 1:14-cv-00884-MCA-LF

ROARK-WHITTEN HOSPITALITY 2, LP
d/b/a Whitten Inn, and
JAI HANUMAN, LLC, d/b/a
Whitten Inn Taos and/or El Camino Lodge,

        Defendants.

### **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

THIS MATTER comes before the Court on plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion to Compel Discovery of Defendants' Financial Information (Doc. 134) filed on May 3, 2017, and fully briefed on June 23, 2107. *See* Docs. 141, 151, 152. Having reviewed the submissions of the parties, the relevant law, and being fully advised in the premises, the Court finds that the motion is well taken and will be granted.

**I.**       **Background**

This case arises from allegations of racial discrimination and retaliation by Roark-Whitten Hospitality 2 ("RW2"), in violation of Title VII of the Civil Rights Act of 1964[1] and Title I of the Civil Rights Act of 1991.[2] The EEOC alleges that RW2 created a hostile work environment and discriminated against a class of minority workers. *See generally* Doc. 87. The EEOC's claims are based on RW2's former owner Larry Whitten's behavior at the Whitten Inn in Taos, New Mexico. As described in their motion to compel, Mr. Whitten

---

[1] 42 U.S.C. § 2000e.

[2] 42 U.S.C. § 1981a.

> routinely used vulgar language and directed racial slurs at the hotel's Hispanic employees, demoted an employee because of his Hispanic accent, Anglicized the names of Hispanic employees, forb[ade] the use of Spanish in his presence and/or on hotel premises, imposed more onerous work standards on Hispanic employees than Anglo employees, directed employees not to rent rooms to Hispanic customers, terminated and forced the resignation of Hispanic employees, and retaliated against employees who brought the discriminatory employment practices to Mr. Whitten's attention.

Doc. 134 at 2–3.

Although the second amended complaint focuses on the minority employees who were employed by Whitten Inn in Taos, the EEOC initially also brought its claims against three other hotels that were owned and operated by Larry Whitten: Roark-Whitten Hospitality 3, LP, in Santee, South Carolina ("Whitten Santee"); Abilene TravelLodge, Ltd, in Abilene, Texas ("Whitten Expo"); and Better Hotels, Ltd., also in Abilene, Texas ("Whitten University"). Doc. 1. The Court dismissed Whitten Santee, Whitten Expo, and Whitten University for lack of personal jurisdiction, and they are no longer parties to this lawsuit. Doc. 29. Larry Whitten was the owner of all four Whitten hotels and owned a 99% partnership in the Texas corporation Eastside Hotels, Inc., which managed all four hotels.[3] Doc. 22 at 3. In May of 2014, however, Whitten sold RW2 to Jai Hanuman, LLC ("Jai"). Doc. 134-3 at 2. In its Second Amended Complaint, the EEOC added defendant Jai as a successor employer. *See* Doc. 87. Jai subsequently sold the hotel to SGI, LLC ("SGI"). Doc. 134 at 4. The EEOC has moved to amend its complaint to add SGI as a defendant. Doc. 86. That motion is pending before the Court.

---

[3] The EEOC has discovered that Larry Whitten and/or Eastside Hotels owned, operated, and managed other hotels during the relevant time period, including Whitten Inn Oklahoma City, Whitten Inn Big Spring, Motel 10, and Whitten Inn Kerrville. Doc. 134 at 3 n.1. The motion before the Court only includes the entities currently alleged to be a part of the integrated enterprise, and the Court's ruling does not apply to other hotels owned, operated, or managed by Larry Whitten and Eastside Hotels.

2

In its motion to compel, the EEOC requests the Court to compel financial information from defendants RW2 and Jai, as well as from the non-party hotels Whitten Santee, Whitten Expo, and Whitten University. The EEOC contends that the information is relevant to its claims for integrated enterprise, punitive damages, and successor employer liability. *See* Doc. 134 at 10–12; Doc. 151 at 5–7.[4] Defendants maintain that they have produced certain financial information concerning RW2, and that any further production is unnecessary and immaterial. *See* Doc. 141. I find that the information requested is relevant and proportional to the needs of the case and will grant the motion.

## II.     **Standard for Discovery**

Parties may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). The factors that bear upon proportionality are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

The scope of discovery under rule 26 is broad. *See Gomez v. Martin Marrietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) ("the scope of discovery under the federal rules is broad"). The federal discovery rules reflect the courts' and Congress' recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a result of this policy, Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could

---

[4] The EEOC also contends that RW2's own theory of the case placed its financial condition— and that of its successors—directly at issue. Doc. 151 at 7. Because I find that the requested financial information is relevant to the EEOC's integrated enterprise theory, successor employer liability, and punitive damages, it is unnecessary to determine whether the information is also relevant to RW2's theory of the case.

3

bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649–50 (D.N.M. 2007) (internal quotations marks omitted)(brackets in original). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520 (internal quotation marks omitted).

> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under FED. R. CIV. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Id.*

### III. Discussion

A. <u>The financial information requested by the EEOC is relevant and proportional</u>.

The EEOC's motion specifically requests that RW2 provide full and complete responses to Interrogatory No. 9 and Request for Production No. 7. Doc. 134 at 5–6. Interrogatory No. 9 asks:

> For Defendant Roark-Whitten Hospitality 2, LP d/b/a Whitten Inn; Roark-Whitten Hospitality 3, LP d/b/a Whitten Inn; TravelLodge, Ltd, d/b/a Whitten Inn Expo; and Better Hotels, Ltd, d/b/a Whitten Inn; Eastside Hotels, Inc.; Roark-Whitten Investment, LLC, and/or any other entity that is in partnership with, owned by, or operated by Defendant or any of its affiliates, state the total gross revenues earned by each entity and any of its subsidiaries or affiliates from 2009 to the present time.

*Id.*[5] RW2 answered:

---

[5] Document 134-3 is "Exhibit 3" to the EEOC's motion which contains a total of 10 exhibits consisting of more than 90 pages. The EEOC's exhibits far exceed the page limit for exhibits allowed as provided in D.N.M.LR-Civ. 10.5 (exhibits "must not exceed a total of fifty (50) pages, unless all parties agree otherwise"), and there is no indication that the parties agreed that

4

> *See* RW2's answer, including objections, to Interrogatory No. 1.[6]
> Objection is further made to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and that it seeks proprietary and confidential information. To the extent Plaintiff alleges any relevance to a claim for punitive damages, Plaintiff has failed to establish a prima facie showing that it is entitled to punitive damages. Moreover, the only relevant net worth is the net worth of RW2 at the time of trial. Accordingly, this Interrogatory is both premature and overly broad.
>
> Without waiving said objections, RW2 states: With regard to Roark-Whitten Hospitality 2, LP:
>
> 2009 - $205,755.05;
> 2010 - $947,395.61;
> 2011 - $863,073.78;
> 2012 - $794,169.24;
> 2013 - $866,023.40;
> 2014 - $315,665.09.
>
> SUPPLEMENTAL ANSWER: Incorporating its answer, including all objections without waiver, RW2 supplements as follows: RW2 had revenues reported on its tax return for 2015 of $119,133.64. The preliminary figure for 2016 is $81,435.50.

---

the EEOC could exceed the page limit in the record. Further, the excess pages are unnecessary. The Court's local rules require that a party seeking relief pursuant to FED. R. CIV. P. 26(c) or 37(a) must attach a copy of the interrogatory, request for production, request for admission, or relevant portion of the deposition at issue and the response or objection thereto. D.N.M.LR-Civ. 37.1. The rule does not require—nor does the Court desire—all of the discovery requests propounded, only those at issue in the motion. Here, not only did the EEOC provide all of the discovery requests with defendants' responses and objections, Docs. 134-3, 134-4, but it unnecessarily provided a complete set of their discovery requests <u>without</u> defendants' responses and objections. In future, the EEOC need only provide the Court with the discovery requests and responses or objections at issue.

[6] RW2's objections to Interrogatory No. 1 reads:

> Objection. RW2 objects to Interrogatory No. 1 to the extent it implies that RW2, Defendant Jai Hanuman, LLC, d/b/a/ Whitten Inn Taos and/or El Camino Lodge, Roark-Whitten Hospitality 3, LP d/b/a Whitten Inn; TravelLodge, Ltd, d/b/a/ Whitten Inn Expo, Better Hotels, Ltd, d/b/a Whitten Inn, Eastside Hotels, Inc., and/or Roark-Whitten Investment, LLC are partnership or affiliates. RW2 further objections that this Interrogatory seeks information regarding entities beyond the scope of permitted discovery in this lawsuit. RW2 also objects to Interrogatory No. 1 to the extent it seeks discovery of information about entities that have been dismissed from this matter based on lack of jurisdiction.

SECOND SUPPLEMENTAL ANSWER: Incorporating its answer, including all objections without waiver, RW2 supplements as follows: see documents produced herewith as Whitten 0570.[7]

Doc. 141-1 at 1–2.

Request for production No. 7 asked RW2:

Please provide documents sufficient to establish the Defendant's net worth during the period from July 2009 to present. Such documentation may include but is not limited to financial statements, including any audited financial statement, financial statement to potential lending institutions, profit-and-loss statements, tax returns, annual reports, and/or insurance policies.

Doc. 134-1 at 18. RW2 responded:

Objection. See RW2's answer to Interrogatory No. 9. Additionally, RW2 objects to Request for Production No. 7 to the extent that it seeks discovery of attorney work product because it purports to require RW2 to make a legal determination as to what may be "sufficient to establish" net worth.

Doc. 134-3 at 18–19.

Similarly, the EEOC seeks a full and complete response from Jai to request for

production No. 6:

Please provide documents sufficient to establish the Defendant's net worth during the period from January 2014 to the present time. Such documentation may include, but is not limited to, financial statements, including any audited financial statements, financial statements to potential lending institutions, profit-and-loss statements, tax returns, annual reports, and/or insurance policies.

Doc. 134-4 at 10. Jai responded:

Objection. Jai is not a party to this lawsuit and this Request for Production places an unnecessary burden and expense on Jai which outweighs the Request's likely benefit. Jai further objections to this Request as any claims for the relevance of the requested information are overly broad and are disproportionate to the needs of the case considering the importance of the discovery of any information from Jai. Jai further objects to this Request as the information sought is not admissible, is not relevant and is not likely to lead to the discovery of admissible or relevant information. Jai further objects to this

---

[7] These documents include RW2's profit and loss statements, the content of which is not necessary for a determination of this motion. Doc. 141 at 2, n.2.

> Request as harassment from the EEOC because Jai is not a party to this lawsuit, is not the subject of any charges of discrimination related to this lawsuit, no longer has an ownership interest in the hotel at issue, and is not appropriately subject to any of the relief available under Title VII. Jai further objects to this Request to the extent that it seeks discovery of attorney work product because it purports to require Jai to make a legal determination as to what may be "sufficient to establish" net worth. Jai further objects, as [sic] to the extent Plaintiff alleges any relevance to a claim for punitive damages, Plaintiff has failed to establish a prima facie showing that it is entitled to punitive damages against Jai. Moreover, the only relevant net worth is the net worth of Jai at the time of trial. This Interrogatory is both premature and overly broad. Jai further objects to Request for Production No. 6 to the extent that it seeks discovery of attorney work product because it purports to require Jai to make a legal determination as to what may be "sufficient to establish" net worth.

Doc. 134-4 at 10–11. Jai has not produced any financial information in response to the request. Doc. 134 at 8, n. 4; Doc. 134-8.

1. <u>Integrated Enterprise</u>

First, financial information for all four hotels is relevant to the EEOC's theory that the hotels comprise an "integrated enterprise." *See* Doc. 87 at 6. The integrated enterprise theory makes corporations liable for another corporation's actions when the two (or more) corporations are closely connected. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014). The Tenth Circuit has adopted the "integrated enterprise" or "single-employer" test to determine "whether two nominally separate entities should in fact be treated as an integrated enterprise." *Equal Employment Opportunity Comm'n v. Bok Fin. Corp.*, No. CIV 11-1132 RB/LAM, 2014 WL 11730480, at *2 (D.N.M. Feb. 12, 2014) (*quoting Bristol v. Bd. of Cnty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)) (internal quotations omitted). The Tenth Circuit has applied the integrated enterprise test when defining "employer" in Title VII cases. *See Bristol*, 312 F.3d at 1220. "Courts applying the single-employer test generally weigh four factors: (1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial

control." *Id*. at 1227. "The integrated enterprise test is intensively factual in nature, making it important to have the benefit of a fully-developed record through discovery prior to resolving this issue either by summary judgment or at trial." *EEOC v. Moreland Auto Group*, 2012 U.S. Dist. LEXIS 84421, at *7 (D. Colo. 2012) (unpublished) (internal quotations and citation omitted). A plaintiff alleging that multiple entities are an integrated enterprise "should be accorded a full and fair opportunity to develop his case under this theory." *Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983).

For the purposes of this motion, it is not necessary for the Court to determine whether the RW2 and the three other Whitten hotels are an integrated enterprise. In this phase of the case, the only questions are whether the discovery sought is relevant to the parties' claims or defenses and is proportional to the case. Despite RW2's argument to the contrary, I find that it is both.

The EEOC alleges that each hotel was managed by the same Texas Corporation, Eastside Hotels. Doc. 134 at 3. The hotels shared the same business office in Abilene, Texas, "which was responsible for all accounting functions for the hotels, including accounts receivable, accounts payable, payroll, checkbook recordkeeping, ordering supplies, and any other financial or recordkeeping duties." *Id*. The financial documents sought by the EEOC, including financial statements, profit-and-loss statements, tax returns, annual reports, insurance policies and information submitted to lending institutions—for all four hotels—could demonstrate whether they have interrelated operations, and whether they are under common management and financial control.

Additionally, financial information from all four hotels is relevant for the purposes of establishing the appropriate statutory damages cap under Title VII.[8] "When conducting discovery for purposes of acquiring evidence of an integrated enterprise, a party is not limited to information on the named defendants, but rather can obtain discovery on non-party entities and aggregate their employees along with those of named defendants for purposes of establishing the proper damage cap." *Moreland Auto Group*, 2012 U.S. Dist. LEXIS 84421, at *8; *see also Plotts v. Chester Cycles LLC*, 2016 WL 614023, at *4 (D. Ariz. Feb. 16, 2016) (". . . since consolidation for purposes of counting employees to raise or lower the damages cap does not, itself, create liability for a previously unnamed non-party, but rather considers the consolidated entity solely for the purpose of determining liability for the named party, the consolidated entity need not be a party.") (citing *Claudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1022 n.4 (9th

---

[8] The statutory damages cap for Title VII cases is as follows:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
>
> **(A)** in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> **(B)** in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> **(C)** in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> **(D)** in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

Cir. 2000)).

As the Ninth Circuit explained, a non-party need not be a named defendant in the lawsuit before it could be found to form a "single employer" with the named defendant. *Claudle*, 224 F.3d at 1022 n.4. "Such a finding would result in no legal judgment against [the non-party] itself, and, if [the non-party's] relationship with [defendant] were in fact so close that it satisfied the criteria for a 'single employer,' it would be difficult to maintain credibly that [the non-party] lacked sufficient notice of its increased exposure through [the defendant's] heightened liability under § 1981a." *Id*.

Allowing discovery of information against the non-party Whitten hotels will not result in a legal judgment against them. Further, a party may request information from non-parties during the discovery process through the use of a subpoena. *See* FED. R. CIV. P. 34(c); *see also United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 589 (D.N.M. 2015) ("by identifying the individual who may receive a subpoena as a "person" rather than a "non-party," rule 45's text indicates that it is meant to apply to both parties and non-parties. FED. R. CIV. P. 45(a)(1)(A)(iii)."). Rather than using a subpoena to access information from the non-party hotels, however, the EEOC requested the information from RW2. RW2 did not object to the production of the non-parties' financial information on the basis that RW2 does not have possession, custody, or control of the information. *See* Doc. 134-3 at 2, 6, 18–19; Doc. 141-1 at 2. RW2 is, therefore, responsible for producing relevant information.

Defendants argue that the cases cited by the EEOC do not support the proposition that the EEOC is entitled to financial information of the non-party entities. Doc. 141 at 3. Defendants distinguish the EEOC's cases by highlighting the ultimate outcome of each case rather than acknowledging the courts' discussion of what constitutes an integrated enterprise contained in

those cases. *See Id*. at 3–4. While defendants are correct that none of the integrated enterprise cases cited by the EEOC specifically holds that the EEOC is entitled to financial information, this argument ignores the standard for discovery. It is enough that the EEOC established that the information sought falls within the scope of Rule 26.

2. Successor Employer Liability

Second, the financial information for all four hotels is relevant to the EEOC's claim for successor employer liability. Generally, "where one corporation sells its assets to another corporation, the latter is not liable for the former's debts unless the transaction fits within well-defined exceptions." *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 224 (10th Cir. 1982). These exceptions include: (i) when there is an express or implied assumption of liability; (ii) when the transaction results in a consolidation or merger of two corporations; (iii) when the purchaser is a mere continuation of the seller; and (iv) when the transfer is for the fraudulent purpose of escaping liability. *Id.*

In the *Trujillo* case, the Tenth Circuit endorsed the ruling of the Sixth Circuit in *E.E.O.C. v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (6th Cir. 1974). *MacMillan* holds that one who acquires and operates the business of an employer found guilty of unfair employment practices in violation of Title VII may be held responsible for remedying his predecessor's unlawful conduct. *Id.* at 1090. The *MacMillan* decision emphasizes, however, "that the liability of a successor is not automatic, but must be determined on a case by case basis." *Id.* at 1091.

The court in *MacMillan* identified nine factors which are relevant in determining whether to impose Title VII liability on a successor employer. *Id.* at 1094. The nine *MacMillan* factors have been refined into a three-factor test: "(1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the

purchase, to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the predecessor and successor." *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986).

As noted above, Whitten sold RW2 to Jai. As a successor employer, Jai may be liable for the discriminatory practices of RW2 if the EEOC can establish the *MacMillan* factors. The EEOC explains that "if the predecessor is still an on-going entity capable of providing relief at the present time, then successor liability is not appropriate." Doc. 151 at 5. Here, if RW2 is unable on its own to provide relief, than perhaps the integrated enterprise, if established, will be able to provide relief. The only way to know whether the integrated enterprise would be able to provide relief—thereby relieving Jai (and any other successor employer) of liability—is to analyze the financial information for Whitten Santee, Whitten Expo, and Whitten University in conjunction with the financial information from RW2. Accordingly, financial information from the non-party hotels is clearly relevant to whether the successor employer is liable in this case.

3. Punitive Damages

Third, financial information for all four hotels and Jai is relevant to the EEOC's claim for punitive damages.[9] In their responses to the EEOC's discovery requests, both defendants objected to producing financial information "[t]o the extent Plaintiff alleges any relevance to a claim for punitive damages, Plaintiff has failed to establish a prima facie showing that it is entitled to punitive damages." Doc. 134-3 at 6 (response to Interrogatory No. 9), 18 (response to Request for Production No. 7 referring to RW2's answer to Interrogatory No. 9); Doc. 134-4 at

---

[9] "A complaining party may recover punitive damages under [Title VII] against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

10. Defendants' objection is without merit and is overruled.

It is well settled in that "[i]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages." *Roberts v. Shawnee Mission Ford, Inc.*, No. 01-2113-CM, 2002 WL 1162438, at *4 (D. Kan. Feb. 7, 2002) (internal citation and quotation omitted); *see also Pendroza v. Lomas Auto Mall, Inc., v. Independent Auto Dealers Svc. Corp., Ltd.*, 2008 WL 4821457, *2 (D.N.M. July 10, 2008) (unpublished) ("The Court follows the majority of state and federal courts, and permits discovery of a defendant's net worth without requiring the plaintiff to establish a prima-facie case for punitive damages."). "[I]nformation [discovery] regarding wealth and size of defendants in cases where plaintiff is seeking punitive damages is both relevant for purposes of assessing punitive damages and discoverable prior to trial." *Moreland Auto Group*, 2012 U.S. Dist. LEXIS 84421, at *8 (brackets in original).

In response to the EEOC's motion to compel, defendants do not dispute that the EEOC has alleged sufficient facts to state a claim for punitive damages or that their financial information is relevant to punitive damages. Indeed, they concede that the "prima facie burden is immaterial." Doc. 141 at 7. Instead, defendants focus on the financial information of "other entities" and contend that because RW2 has already produced financial information, the other entities do not need to produce their financial information. *Id*. at 8. In light of the relevance of financial information as discussed in this opinion, this argument is without merit as to the non-party Whitten hotels.

B. Financial Information from Jai is relevant and proportional.

Defendants correctly point out that there is a sequence to determining liability in this case. First, there must be a finding of discriminatory conduct by RW2. Next, there must be a determination of whether RW2 is able to provide relief and, if not, whether the successor employer is liable in its place.[10] Nevertheless, all discovery must take place within the time prescribed by the Court. As noted above, if RW2—alone or as a part of the integrated enterprise—is unable to satisfy a judgment for punitive damages, Jai is potentially liable for those damages. Jai's financial information is further relevant to whether there has been a sufficient continuity in the business operations of the predecessor and successor. Jai's financial information is, therefore, relevant and proportional to the EEOC's claims of successor liability and punitive damages.

**IV.    Conclusion**

For the foregoing reasons, I find that the financial information for RW2, Whitten Santee, Whitten Expo, Whitten University, and Jai are relevant and proportional to the needs of the case. RW2 initially produced a list of revenues for 2009 through 2014 and supplemented with revenue numbers for 2015 and 2016. Doc. 141-1 at 1–2. In its most recent supplementation, RW2 indicates it provided some financial documents, but only for RW2. No financial documents have been produced with regard to the other non-party hotels or Jai. The financial information produced by RW2 is insufficient to fully and completely respond to the EEOC's Interrogatory No. 9 and Request for Production No. 7 to RW2, and to Request for Production No. 6 to Jai.

---

[10] In a footnote, defendants suggest that the issue of whether RW2 engaged in discriminatory conduct should be bifurcated from the issue of successor liability. Doc. 141 at 7 n.5. No such motion has been filed, however, and that issue is not before the Court. Further, bifurcation of these issues at trial would not affect the discovery phase of this case.

IT IS THEREFORE ORDERED that the EEOC's Motion to Compel Discovery of Defendants' Financial Information is GRANTED, and defendants' objections are OVERRULED.

IT IS FURTHER ORDERED that no later than 30 days from the entry of this order, defendant Roark-Whitten 2 will provide a full and complete answer to EEOC's Interrogatory No. 9, including total gross revenues earned by each entity alleged to have been operating as an integrated enterprise, from 2009 to the present.

IT IS FURTHER ORDERED that no later than 30 days from the entry of this order, defendant Roark-Whitten 2 will produce financial statements, profit-and-loss statements, tax returns, annual reports, insurance policies, and information submitted to lending institutions for Roark-Whitten 2, Whitten Santee, Whitten Expo, and Whitten University, from 2009 to the present.

IT IS FURTHER ORDERED that no later than 30 days from the entry of this order, defendant Jai Hanuman, LLC, will produce its financial statements, profit-and-loss statements, tax returns, annual reports, insurance policies, and information submitted to lending institutions from 2014 to the present.

IT IS FURTHER ORDERED that unless otherwise agreed to by the parties, all of the financial information will be produced pursuant to the stipulated protective order (Doc. 44).

_____
Laura Fashing
United States Magistrate Judge