IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

v.                                                                              1:14-cv-00884-MCA-LF

ROARK-WHITTEN HOSPITALITY 2, LP
d/b/a Whitten Inn, and
JAI HANUMAN, LLC, d/b/a
Whitten Inn Taos and/or El Camino Lodge,
SGI, LLC, d/b/a El Camino Lodge,

        Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Civil Contempt of Court Against Defendant Roark-Whitten 2, LP d/b/a Whitten Inn ("RW 2") and Defendant Jai Hanuman, LLC ("Jai"), filed on October 6, 2017. Doc. 181. None of the defendants filed a response to the motion. The Honorable M. Christina Armijo, Chief United States District Judge, referred the motion to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition." Doc. 182. Having reviewed the motion and the relevant law, and noting that no response has been filed, I find that the motion is well taken and recommend that the Court GRANT the motion and enter default judgment against defendants RW 2 and Jai.

    **I.**        **Background Facts and Procedural Posture**

This case arises from allegations of racial discrimination and retaliation by RW 2, in

violation of Title VII of the Civil Rights Act of 1964[1] and Title I of the Civil Rights Act of 1991.[2] The EEOC alleges that RW 2 created a hostile work environment and discriminated against a class of minority workers. *See generally* Doc. 179. The EEOC's claims are based on RW 2's former owner Larry Whitten's behavior at the Whitten Inn in Taos, New Mexico. As the EEOC described in its motion to compel, it alleges that Mr. Whitten

> routinely used vulgar language and directed racial slurs at the hotel's Hispanic employees, demoted an employee because of his Hispanic accent, Anglicized the names of Hispanic employees, forb[ade] the use of Spanish in his presence and/or on hotel premises, imposed more onerous work standards on Hispanic employees than Anglo employees, directed employees not to rent rooms to Hispanic customers, terminated and forced the resignation of Hispanic employees, and retaliated against employees who brought the discriminatory employment practices to Mr. Whitten's attention.

Doc. 134 at 2–3. In May of 2014, Whitten sold RW 2 to defendant Jai. Doc. 134-3 at 2. In its Second Amended Complaint, the EEOC added defendant Jai as a successor employer. *See* Doc. 87. Jai subsequently sold the hotel to SGI, LLC ("SGI"). Doc. 134 at 4. SGI was added as a successor employer in the EEOC's Third Amended Complaint.[3] Doc. 179.

On August 15, 2017, Charles Archuleta, attorney for defendants RW 2 and Jai, filed a motion to withdraw as counsel. Doc. 160. At the hearing on the motion to withdraw, Mr. Archuleta explained that he had not been in contact with RW 2 since July of 2017 and had not communicated with Mr. Whitten since June of 2017. Doc. 176. Mr. Archuleta also made clear that Jai did not oppose his motion to withdraw. Doc. 174 at 2. Accordingly, the Court granted the motion. *See* Docs. 176, 177. Pursuant to the Court's local rules, "[a] corporation, partnership or business entity other than a natural person must be represented by an attorney

---

[1] 42 U.S.C. § 2000e.

[2] 42 U.S.C. § 1981a.

[3] Counsel has entered an appearance on behalf of SGI, but SGI has no involvement with regard to the motion at issue here. *See* Doc. 185.

authorized to practice before this Court." D.N.M.LR-Civ. 83.7.  In granting the motion to withdraw, the Court ordered defendants RW 2 and Jai to obtain new counsel no later than October 2, 2017.  Doc. 177 at 2.  The Court further ordered that certain discovery be completed by October 27, 2017, and that the depositions of the principals of RW 2 and Jai be scheduled and taken no later than November 13, 2017.  *Id.*

The Court took several steps to ensure that RW 2 and Jai were informed of their obligations pursuant to its order.  First, the Court ordered Mr. Archuleta to inform his former clients of the Court's orders.  *Id.*  Second, the Court directed the Clerk of the Court to mail a copy of its order to RW 2 and Jai at the addresses provided by Mr. Archuleta.  *Id.*  Finally, the Court emailed a copy of its order to RW 2 and to Jai at email addresses also provided by Mr. Archuleta.  *See* Doc. 160 at 2; Exh. 1 (attached).

By letter dated October 11, 2017, Larry Whitten, President of RW 2, notified the Court that he was aware of the Court's September 11, 2017 order but could not retain a new attorney because of lack of funds.  Doc. 183.  On October 27, 2017, David Patel, the principal of Jai, called the Court to inform it that Jai also had been unable to retain a lawyer.  During the call, a law clerk confirmed that the physical and email addresses to which the order had been sent were correct.  At Mr. Patel's request, the law clerk emailed the order again, along with additional materials, to the same email address where she sent the order originally.  *See* Exhs. 1, 2 (attached).

Despite these notifications, no attorney entered an appearance on behalf of RW 2 or Jai by October 2, 2017.  Even now, no attorney has entered an appearance on behalf of these corporations.  On October 6, 2017, the EEOC filed the instant motion asking the Court to issue an order to show cause why RW 2 and Jai should not be held in civil contempt and, upon a

3

finding of civil contempt, enter default judgment against these two defendants.

I find that an order to show cause or a contempt order would not be productive and is not necessary. All the factors that the Court should consider in deciding whether to enter a default judgment weigh in favor of doing so. I therefore recommend that the Court enter default judgment against RW 2 and Jai.

## II. Discussion

### A. Defendants' failure to respond.

Under the Court's local rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). While the Court could grant the EEOC's motion merely because RW 2 and Jai failed to file a response, justice requires that the Court address the merits given the sanctions requested and the recommendation that the Court enter a default judgment.

### B. Law Regarding Default Judgment For Failure To Comply With Court Orders

"Under Rule 37(b)(2), a district court may issue sanctions, including default judgment against the disobedient party when a party disobeys a discovery order. Moreover, courts have broad inherent power to sanction misconduct and abuse of the judicial process, which includes the power to enter a default judgment." *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (internal citations and quotations omitted). This district's local rules require that an entity other than a natural person be represented by an attorney. D.N.M.LR-Civ. 83.7. When an attorney for an entity withdraws from representation, another attorney must enter an appearance on behalf of the entity or the Court may impose sanctions, including default judgment. *See* D.N.M.LR Civ. 83.8(c).

The Court has discretion to choose the appropriate sanction to impose for noncompliance with a court order, and should select "the lease onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 106 (D. Colo. 1996). "Default judgments are a harsh sanction" and should only be entered against an offending party "when the adversary process has been halted because of an essentially unresponsive party," *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991), or where the failure to comply with the Court's orders "is the result of willfulness, bad faith, or any fault of the disobedient party rather than inability to comply," *Klein*, 777 F.3d at 1147–48 (internal citation and quotation omitted). A default serves as protection for a diligent party from "interminable delay and continued uncertainty as to his rights." *In re Rains*, 946 F.2d at 733. While courts generally disfavor a default judgment over a determination on the merits,

> a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.

*Id.* (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)).

To determine the appropriate sanction for a violation of a court order, the Court should consider what are known as the "*Ehrenhaus* factors." *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Gates,* 167 F.R.D. at 101–02 (applying the *Ehrenhaus* factors to a default judgment). The non-exhaustive *Ehrenhaus* factors include: "(1) the degree of actual prejudice to the non-offending party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (citations and internal quotations omitted).

These five factors "do not represent a rigid test" that a district court must always apply. *Id.* "The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-helpful 'criteria' or guide posts the district court may wish to 'consider' in the exercise of what must always remain a discretionary function." *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (quoting *Ehrenhaus*, 965 F.2d at 921); *see also Gates,* 167 F.R.D. at 102 ("The whole point of these five factors as 'criteria' is to provide trial courts with some guidance as they make decisions with regard to whether dispositive sanctions are appropriate, or are not appropriate." (emphasis omitted)). However, because of the harshness of a default judgment, due process requires that the "violations be predicated upon willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (internal citations and quotations omitted). The Court addresses each of the *Ehrenhaus* factors below.

1. Degree of Actual Prejudice to the EEOC

Defendants RW 2 and Jai's failure to retain replacement counsel has prejudiced the EEOC by causing considerable delay. This case has been pending for three years, and some basic discovery has yet to take place. Depositions that had been difficult to schedule and which were scheduled for August of 2017[4] were vacated. Doc. 181 at 8–9; *see also* Docs. 169-6, 169-8. RW 2 and Jai owe the EEOC several supplemental discovery answers, which have been on hold while defendants find new counsel. Doc. 181 at 9; Doc. 181-3. The settlement conference set for September of this year was vacated. Doc. 181 at 9; Doc. 173. There is no way that plaintiff can move forward with this case until RW 2 and Jai retain counsel. As the EEOC explains, it

---

[4] Although the EEOC states in its motion that these depositions were scheduled for August 2016, the context of this statement and the documents to which the EEOC cites make clear that depositions were scheduled for August 2017, not 2016. *See* Docs. 169-6, 169-8.

"will continue to be 'faced with interminable delay' and each aggrieved individual will continue to experience 'uncertainty as to his or her rights.'" Doc. 181 at 9 (quoting *In re Rains*, 946 F.2d at 732–33). The degree of actual prejudice to the EEOC for the delay caused by RW 2 and Jai's failure to obtain counsel is substantial and weighs in favor of imposing sanctions.

### 2. The Amount of Interference with the Judicial Process

The amount of interference with the judicial process is also substantial. This case essentially has been stayed by RW 2 and Jai's failure to obtain counsel by the deadline set by the Court. Although RW 2 provided financial information to the EEOC prior to its former attorney's departure, Jai has not done so, in contravention of the Court's order. *See* Doc. 177; Doc. 181 at 3; Doc. 181-4. The depositions of the principals of RW 2 and Jai have not taken place, and depositions of the charging parties have been put on hold. Doc. 181 at 2–3. Further, the Court has not been able to reschedule the settlement conference or set additional scheduling order deadlines due to defendants' lack of counsel. Without representation for RW 2 and Jai, this case has been brought to a standstill. The amount of interference with the judicial process is substantial and weighs heavily in favor of imposing sanctions.

### 3. The Culpability of the Litigants

The fault for failing to comply with the Court's orders to obtain counsel and comply with the discovery demands of this case lies with RW 2 and Jai. The Tenth Circuit has defined a willful failure as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *In re Standard Metals Corp.*, 817 F.2d 625, 628–29 (10th Cir. 1987) (quoting *Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965)). RW 2 and Jai's former counsel, Mr. Archuleta, explained that "RW 2 has ended all communication with counsel" despite his multiple attempts to communicate. Doc. 174 at 2. The failure to

communicate made withdrawal mandatory. *Id*. (citing Rule 16-116A(1) (Counsel shall withdraw if the representation will result in violation of the Rules of Professional Conduct)). Mr. Archuleta further explained that "it is Defendant RW 2's lack of communication for whatever reasons that is disruptive." *Id*. at 3. I agree. RW 2's willful failure to communicate forced counsel's withdrawal and brought this case to a halt. There is nothing in the record that indicates that RW 2, and its principal Mr. Whitten, were unable to communicate with counsel for some reason beyond Mr. Whitten's control.

Further, although Mr. Archuleta was not communicating with RW 2, he was in contact with Jai. Doc. 174 at 2. Jai did not oppose Mr. Archuleta's motion to withdraw. *Id.* Thus, Jai agreed to the withdrawal knowing it would need to retain a new attorney but willfully failing to do so.

RW 2 and Jai were on notice since at least August of 2017 that they would need to obtain new counsel. Doc. 176 at 2. In addition, the Court ordered RW 2 and Jai's former counsel to inform defendants of their obligations under the Court's order allowing him to withdraw. Doc. 177 at 2. The Court also directed the Clerk to mail the order directly to these defendants at their address of record. *Id*. Finally, in an abundance of caution, the Court directly emailed the order to Larry Whitten and David Patel, the principals of RW 2 and Jai, respectively, at their email addresses provided by counsel. There is no indication that RW 2 and Jai did not receive the Court's order. Indeed, the record reflects that both RW 2 and Jai received the order. On October 11, 2017, Mr. Whitten, president of RW 2, wrote a letter to the Court referencing the order. Doc. 183. On October 27, 2017, Mr. Patel, the principal of Jai, called the Court to inform it that Jai also had been unable to retain a lawyer. During the call, a law clerk confirmed that the physical address and email address to which the order had been sent were correct. The Court therefore

presumes that Jai received the order although it emailed another copy of the order to Mr. Patel on October 27. *See* Exhs. 1, 2 (attached).

To keep the case moving, the Court set a short deadline for RW 2 and Jai to obtain new counsel and provided for the continuation of discovery so this case could stay on schedule. Docs. 176 at 2; 177 at 2. The Court ordered RW 2 and Jai to obtain new counsel no later than October 2, 2017, and to supplement the outstanding discovery responses no later than October 27, 2017. Doc. 177 at 2. It also ordered the depositions of Mr. Whitten and Mr. Patel to be scheduled no later than November 13, 2017. *Id*. By failing to obtain counsel and participate in discovery, RW 2 and Jai have both willfully failed to obey the Court's order.

On October 11, 2017, more than a week after counsel was to enter an appearance, the Court received correspondence from Mr. Whitten explaining that he and RW 2 "are totally without funds." Doc. 183. The explanation in the first paragraph of his letter, however, is in direct contradiction with the second paragraph, wherein Mr. Whitten offers to "still honor the offer in the amount of $5,000.00 to the original 7 plaintiffs for a total of $35,000.00." *Id*. The offer is contingent upon "securing funds from a lending institution." *Id.* But if Mr. Whitten can secure funds to honor a settlement offer, he can secure funds to obtain counsel. Accordingly, I find that Mr. Whitten's failure to comply with the Court's order to obtain counsel is a willful violation, rather than involuntary noncompliance. Jai has offered no explanation for its failure to comply with the Court's order, and the Court interprets its silence as a willful refusal to comply. The culpability for failing to comply with the Court's orders lies squarely with RW 2 and Jai, and heavily weighs in favor of imposing sanctions.

    4. <u>The Court Warned RW 2 and Jai in Advance that Dismissal Would be a Likely Sanction for Noncompliance</u>.

In his motion to withdraw, RW 2 and Jai's former attorney warned RW 2 and Jai that

9

failing to obtain an attorney could result in sanctions, including default judgment. Doc. 160 at 2.
Further, the Court's order granting the motion to withdraw clearly stated that "[d]efendants
failure to obtain new counsel by October 2, 2017, may result in sanctions, up to an including a
recommendation to the district judge to enter default judgment against them." Doc. 177 at 2.
And as discussed above, the Court made sure that both RW 2 and Jai received this order.
Accordingly, RW 2 and Jai were specifically warned in advance that default judgment could
result from their failure to obtain counsel.

        5.    The Efficacy of Lesser Sanctions

A lesser sanction, such as a monetary sanction or striking certain defenses, would not be
effective in this case. As the Court noted at the hearing on the motion to withdraw, RW 2 and Jai
have known since at least mid-August that they needed to obtain new counsel. Doc. 176 at 2. It
has been more than 75 days since this initial notice, but neither RW 2 nor Jai have obtained
counsel. Although Mr. Whitten contends he does not have the funds to get an attorney, as
previously noted, this claim is not credible in light of his apparent ability to secure funds to make
a settlement offer. Both RW 2 and Jai have willfully failed to comply with the Court's order to
obtain counsel and participate in discovery, bringing this case to a complete standstill. Further, a
monetary sanction would make it even more difficult for RW 2 and Jai to secure counsel if they
are short of funds, and would do nothing to move the case forward. Similarly, striking some of
defendants' defenses would not cure the situation because any defenses left to RW 2 and Jai
could not be pursued without an attorney. Since lesser sanctions would not be effective, this
factor weighs in favor of entering default judgment.

**III.    Conclusion**

All of the *Ehrenhaus* factors weigh in favor of entering a default judgment against RW 2

and Jai. Lesser sanctions would not be effective in this case because without counsel for the corporate entity defendants, this case cannot move forward, and plaintiffs are left without a way to pursue their claims. I therefore recommend that the Court enter default judgment against RW 2 and Jai for failing to comply with the Court's order to obtain counsel and participate in discovery.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. A corporation, partnership or business entity other than a natural person must be represented by an attorney authorized to practice before this Court. Absent entry of appearance by a new attorney, any filings made by the corporation, partnership or business entity other than a natural person may be stricken.**

_____
Laura Fashing
United States Magistrate Judge