# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ROARK-WHITTEN HOSPITALITY 2,<br>LP d/b/a WHITTEN INN, JAI<br>HANUMAN, LLC, d/b/a WHITTEN INN<br>TAOS AND/OR EL CAMINO LODGE,<br>AND SGI, LLC d/b/a EL CAMINO<br>LODGE,<br><br>    Defendants. | No. 1:14-cv-00884-PJK-LF |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON DEFAULT HEARING**

THIS MATTER came before the court on a default hearing pursuant to Fed. R. Civ. P. 55(b)(2), and the court now enters its findings of fact and conclusions of law.

**Findings of Fact**

1. The Equal Employment Opportunity Commission (EEOC) filed this public enforcement action on September 30, 2014 seeking relief for eight named charging parties. Compl. (ECF No. 1). The Complaint alleged that Defendant Roark-Whitten Hospitality 2 (RW2) engaged in unlawful employment

practices by creating a hostile work environment, engaging in discriminatory practices, and retaliating against employees at a hotel owned by RW2 in Taos, New Mexico (Taos Hotel). Id. at 9 ¶ 77–12 ¶ 97.

2. After learning that RW2 sold the Taos Hotel, the EEOC filed an amended complaint on December 22, 2014, adding as a defendant "the unknown owner and/or XYZ Company(s)/Corporations." Am. Compl. at 2 (ECF No. 4).

3. Thereafter, on August 5, 2016, the EEOC moved to substitute Jai Hanuman LLC (Jai) "for the previously unknown XYZ Company(s)/Corporations." Pl.'s Renewed Mot. to Am. Compl. at 1 (ECF No. 52). The court granted the request, and the EEOC filed its Second Amended Complaint (SAC) on December 30, 2016. See SAC (ECF No. 87).

4. After learning that Defendant Jai sold the Taos Hotel to SGI, LLC (SGI), the EEOC filed its second motion to amend the complaint to add SGI as a defendant. Pl.'s Second Mot. to Am. Compl. to Add SGI, Ltd. as a Def., Dec. 16, 2016 (ECF No. 86). Jai and RW2 opposed the addition of SGI, Def.'s Resp. to Pl. EEOC's Second Mot. to Am. Compl. to Add SGI, LLC as a Def., Jan. 17, 2017 (ECF No. 94), and Jai moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). Def. Jai Hanuman LLC's 12(b)(6) Mot. to Dismiss, Jan. 19, 2017 (ECF No. 96). The court granted the EEOC's second motion to amend and denied Jai's motion to dismiss. Mem. Op. & Order, Sept. 21, 2017 (ECF No. 178).

5. Counsel for RW2 and Jai withdrew on September 11, 2017. Order Granting Mot. to Withdraw, Sept. 11, 2017 (ECF No. 177). The EEOC moved for civil contempt against RW2 and Jai based upon a failure to obtain new counsel by October 2, 2017 and otherwise defend. Pl. EEOC'S Mot. for Civil Contempt of Ct. Against Def. Roark Whitten 2, LLP & Def. Jai Hanuman, LLC, Oct. 6, 2017 (ECF No. 181). Larry Whitten, President of RW2, informed the court that RW2 was unable to retain an attorney due to lack of funds but offered to pay a total of $35,000. Letter, Oct. 12, 2017 (ECF No. 183); Proposed Findings & Recommended Disposition, Nov. 2, 2017 at 3 (ECF No. 187). David Patel, principal of Jai, informed the court that Jai was unable to retain a lawyer. Proposed Findings at 3, Nov. 2, 2017 (ECF No. 187). Of course, the business entities would require counsel to represent them. D.N.M. LR-Civ. 83.7.

6. Upon recommendation of a magistrate judge, the district court entered a default judgment against RW2 and Jai on all issues of liability, Fed. R. Civ. P. 55(a), envisioning a separate hearing as to damages and any injunctive relief, Fed. R. Civ. P. 55(b)(2). Am. Order Adopting Proposed Findings & Recommended Disposition, Nov. 30. 2017, at 2 (ECF No. 190).

7. The EEOC filed its Third Amended Complaint and added SGI as a party under a theory of successor liability. Pl.'s Third Am. Compl., Sept. 28, 2017 (ECF No. 179). SGI moved to dismiss it, arguing that the EEOC failed to adequately plead the essential elements necessary to establish successor liability, including

that SGI had notice of the lawsuit at the time it purchased the Taos Hotel. Def.'s Mot. to Dismiss, Oct. 26, 2017 (ECF No. 186). The court ruled that the Third Amended Complaint failed to adequately plead that SGI had notice of the lawsuit at the time it purchased the Taos Hotel. Mem. Op. & Order at 8–10, July 30, 2018 (ECF No. 199). While the court granted SGI's motion to dismiss, it also granted leave to the EEOC to amend its complaint to cure the notice issue. Id. at 9–10.

8. On August 13, 2018, the EEOC filed its Fourth Amended Complaint. Fourth Am. Compl., Aug. 3, 2018 (ECF No. 201). On September 10, 2018, SGI moved to dismiss the Fourth Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Def. SGI LLC's Mot. to Dismiss (ECF No. 203). This court granted the motion to dismiss on the basis that the Fourth Amended Complaint failed to allege sufficient facts to show that SGI had notice of the employment dispute when it purchased the Taos Hotel. Mem. Op. & Order, Aug. 20, 2019, at 10 (ECF No. 215).

9. The court set default matters for hearings on October 3, 2019. Notice of Settings–Default Hr'gs, Aug. 23, 2019 (ECF No. 216). Parties were allowed to file ten-page pre-hearing briefs. Id. Upon telephonic inquiries from counsel, the court extended the time for the default hearing to 90 minutes and allowed 50 pages of exhibits to the pre-hearing briefs. Min. Order, Sept. 5, 2019 (ECF

No. 217). The court placed no restrictions on what the parties could present (including live testimony) at the hearing.[1]

10. At the hearing Defendants RW2 and Jai were represented by counsel, Pat Rogers, on a limited entry of appearance and the EEOC was represented by counsel Jeff Lee and Loretta Medina. Clerk's Min., Oct. 10, 2019 (ECF No. 225).

11. The EEOC requests a judgment for injunctive relief and damages from Defendants RW2 and Jai (successor liability): (1) permanently enjoining them from engaging in discrimination or retaliation against employees in New Mexico, and (2) directing them to file a written notice containing specific information with EEOC within five days of opening a new hotel business in this state. See Pl.'s Prehr'g Br., at 3, 8 (ECF No. 221). At the hearing, the EEOC submitted a proposed form of injunction. EEOC also requested (1) $600,760.38 in back pay and prejudgment interests for the seven charging parties and one aggrieved individual, (2) $500,000.05 — or $45,454.54 per

---

[1] At the hearing, the court reminded counsel that counsel could have moved for additional pages. Hr'g Tr., Oct. 10. 2019, at 60–61, Oct. 10, 2019 (ECF No. 224). The court requested prehearing briefs (and any exhibits) just as it would for a trial. In that regard, at a trial, the parties still put on evidence, just as the parties were free to do in this case. Although the EEOC explained that "we would be more than happy to supplement the back pay calculations and what we normally do, would be done in the course of a jury trial, or something to that effect, if the Court would allow," Hr'g Tr., Oct. 10. 2019, at 54:19–23, the time to come forward with that information has passed — the hearing was not a tryout for a later main event.

claimant — in compensatory damages for 11 aggrieved individuals, and (3) $49,999.95 in punitive damages to be distributed among the 11 aggrieved individuals. Id. at 5–7; see 42 U.S.C. §§ 1981a, 2000e-5(g)(1).

12. The EEOC claimed backpay as follows:

| Employee[2] | Termination Date[3] | Backpay | Plus Interest |
|---|---|---|---|
| Kathy Archuleta | July 31, 2009 | $115,608.36 | $156,009.20 |
| Martín Gutierrez | August 16, 2009 | $99,355.73 | $122,847.80 |
| Marcos Jeantette | August 9, 2009 | $2,087.00 | $3,023.51 |
| Michelle Martinez | August 16, 2009 | $7,276.60 | $10,485.37 |
| Dale Quintana | August 17, 2009 | $3,071.25 | $4,434.03 |
| Jennie Valdez | August 17, 2009 | $77,357.80 | $105,277.97 |
| Rebecca del Palacio | August 30, 2009 | $118,526.46 | $148,664.15 |
| Maria Tafoya | June 23, 2011 | $38,699.34 | $50,018.35 |

At the hearing, the EEOC indicated that Mr. Gutierrez's backpay should have ended with the quarter beginning January 2015, rather than the quarter beginning July 2019. Hr'g Tr., Oct. 10. 2019, at 16:8–9.

13. For their part, RW2 and Jai sought dismissal notwithstanding the entry of default on the grounds that EEOC failed to plead facts satisfying Title VII's employee numerosity requirement against either RW2 or Jai or, alternatively,

---

[2] See Pl.'s Prehr'g Br., Exs. 16–24 (ECF Nos. 221-17–221-25).

[3] See SAC (ECF No. 87); Pl.'s Prehr'g Br., Exs. 16–24 (ECF Nos. 221-17–221-25).

that EEOC failed to plead notice sufficient to hold Jai liable under a theory of successor liability. See Defs.' Prehr'g Br. at 1, 8 (ECF No. 222).

14. At the hearing, none of the parties offered testimony from live witnesses. The only evidence relevant to damages was submitted in the form of affidavits, declarations, or other exhibits. Some of the EEOC's declarations are unsigned. Pl.'s Prehr'g Br., Exs. 14–15.

15. The parties, EEOC and RW2 and Jai raised several objections at the hearing, mostly in reference to the submissions on damages, which the court took under advisement.

16. EEOC made the following objections and motions which I now rule upon.

    a. Objection to the admission of supplementary exhibits offered by RW2 and Jai at the default hearing as out-of-time. Hr'g Tr., Oct. 10, 2019, at 23:22–24, 29:24–30:8. This objection is overruled. EEOC has not shown any prejudice resulting from consideration of these exhibits, many of which come from the record.

    b. Objection to RW2 and Jai's claimed mischaracterization of interviews conducted by EEOC's expert, Dr. Berk-Seligson. Id. at 31. This objection is overruled. The charges, EEOC complaints, what was pled in the SAC, and Dr. Berk-Seligson's interviews speak for themselves.

    c. Objection to RW2 and Jai's discussion of interviews conducted by Dr. Berk-Seligson as not germane to damages. Id. at 32. This objection is

overruled. The court will consider RW2 and Jai's arguments and evidence for what they are worth.

   d. Motion to strike Exhibit H (ECF No. 221 #8) to RW2 and Jai's Pre-Hearing Brief as hearsay. Hr'g Tr., Oct. 10, 2019, at 39. This motion is denied. Counsel for RW2 contends that the statement was a deposition exhibit and the matter was explored on deposition.

17. RW2 and Jai made the following objections and motions which I now rule upon:

   a. Motion to strike EEOC Ex. No. 2 (ECF No. 221-3) (Expert Report) under Rule 702. Hr'g Tr., Oct. 10, 2019, at 25:4–26:6. This motion is granted. The court is not persuaded that Dr. Berk-Seligson's testimony would be reliable and reliably applied. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Further, it is not clear that Dr. Berk-Seligson's testimony would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Other courts have reached similar conclusions about Dr. Berk-Seligson. See Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 624–25 (S.D.N.Y. 2009); EEOC v. Sephora USA, LLC, 419 F. Supp. 2d 408, 418 (S.D.N.Y. 2005); but see EEOC v. Premier Operator Servs., Inc., 113 F. Supp. 2d 1066, 1069–70 (N.D. Tex. 2000).

   b. Motion to strike EEOC exhibits 5–15 (ECF Nos. 221-6–221-16) as hearsay. Hr'g Tr., Oct. 10. 2019, at 25:1–6 (ECF Nos. 221-5–221-15).

This motion is denied. RW2 and Jai had access to the declarations contained in these exhibits for several weeks and failed to object.

c. Motion to strike EEOC backpay calculations as faulty and insufficient under Fed. R. Evid. 403, 1006. Hr'g Tr., Oct. 10, 2019, at 36–38; see SAC (ECF Nos. 221-17–221-26). The EEOC provided the basic methodology for the calculations and some of the data in response to an earlier interrogatory by RW2. Pl.'s Prehr'g Br., Ex. 16 (ECF No. 221-17). The EEOC sought the difference between the pay the person would have received had he or she not been discharged and the amount actually earned, contingent on mitigation. Id. The EEOC updated the calculations and extrapolated them through October 2019, while acknowledging that it was missing some data on interim earnings for two employees. Id., Ex. 1 at ¶¶ 7–8 (ECF No. 221-2).

d. The court is concerned about the sources of the underlying data, particularly from 2015 on and especially concerning mitigation. As the court expressed at the hearing, some of the damage calculations are extraordinary, as long as ten years. Hr'g Tr., Oct. 10, 2019, at 14:18–20. For example, Rebecca del Palacio (an executive housekeeper) was told that her wages would be reduced and chose to resign on August 30, 2009 rather than work for a reduced amount. SAC ¶¶ 70–73 (ECF No. 87). Yet EEOC's backpay calculation has her wages at $7,090 per quarter (offset by earnings) from July 2009 to the present. Pl.'s Prehr'g

Br., Ex. 24 (ECF No. 221-25). For another example, Martín Gutierrez (a night auditor) who was let go on August 16, 2009, is shown as receiving $3,987 per quarter (offset by earnings) from July 2009 to January 2015. Hr'g Tr., Oct. 10, 2019, at 16. Counsel for the EEOC candidly admitted that RW2 at the time paid more than other employers in the area and this occurred during a recession. Id. at 15. While the court does not quarrel with the equitable nature of backpay and the notion that the difficulty of determining damages should not bar recovery, the court also believes that fundamental fairness requires that one's adversary should be provided enough information to analyze default damages being claimed. Counsel for the EEOC had every opportunity to provide the underlying documentation at the hearing. Merely because the court asked for prehearing briefs (and limited the number of pages in those briefs and any exhibits) did not mean it limited the EEOC from offering live testimony or seeking to admit additional exhibits at the hearing. The court declines to award backpay.

**Conclusions of Law**

18. In order to enter or effectuate a default judgment, a district court may hold a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Unless the district court has all the

evidence required before it to make a fully informed decision, an evidentiary hearing is generally required. SEC v. Smyth, 420 F.3d 1225, 1231–33 (11th Cir. 2005).

19. A defaulting defendant admits a complaint's well-pleaded allegations, but not legal conclusions; there must be a sufficient basis in the pleadings to support the judgment. Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010). Indeed, the Tenth Circuit has stated that once default has entered, the district court has a responsibility to undertake this task. Id. If a plaintiff's claim would be barred or dismissed on a Rule 12(b)(6) motion, it cannot be the basis of a default judgment. Id. (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); see also Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). What is required is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. There must be "more than a sheer possibility that a defendant has acted unlawfully." Id.

20. The operative document is the SAC. Hr'g Tr., Oct. 10, 2019, at 4:24–5:2. Applying these standards, the court will dismiss as to Jai because the SAC simply does not state a plausible claim against Jai as to successor liability on

11

the notice element, i.e., that Jai as a successor had notice of the charges. See Trujillo v. Longhorn Mfg. Co., 694 F.2d 221, 224 (10th Cir. 1982) (relying on EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1094 (6th Cir. 1974)); see also Mem. Op. & Order filed July 30, 2018 at 8 (ECF No. 199) (Vazquez, J.) (considering notice "a critical element of a successor liability claim"). The court recognizes that a prior judge assigned to the case repeated the notice allegation from the SAC (in contrast with stating that various facts could demonstrate continuity) and then stated that Jai did not make a Twombly/Iqbal argument. Mem. Op. & Order, Sept. 21, 2017, at 10 (ECF No. 178) (Armijo, J.). Of course, the prior judge's order was interlocutory.

21. More importantly, in its prior motion to dismiss, Jai made the broad argument that it could not be liable merely because it sold the hotel rather than a Twombly/Iqbal argument. Although the prior judge commented that the successor liability issue (including notice) could be addressed on summary judgment after discovery, id. at 12 n.3, the EEOC is not relieved of properly alleging the notice element. The Court was clear in Ashcroft that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." 556 U.S. at 679. The well-pleaded facts must "permit the court to infer more than the mere possibility" of liability. Id.

22. After alleging the hotel was sold to Jai in 2014, the SAC alleges:

> 15. After this lawsuit was filed, and on or after October 5, 2014, Jai Hanuman LLC's registered agent, David "Dharmesh" Patel reported to news agencies that he was the new owner of the Whitten

>     Inn in Taos, New Mexico. Through Patel, Jai Hanuman had notice of
>     the Charges filed with the Commission that are the subject of this
>     lawsuit.
>
> SAC at 4, ¶ 15 (ECF No. 87).

23. The fact that Jai's registered agent merely reported to news agencies that he was the new owner of the Whitten Inn does not create any inference (let alone a reasonable one) that he (and in turn Jai) had notice of the charges. Nothing in the SAC or the default hearing suggested that Patel or Jai had the requisite notice.

24. On the other hand, after considering the SAC, the court concludes that it plausibly alleges that RW2 operated the hotel with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e(b). See SAC at 1 (listing eight charging parties); id., at 3, ¶ 12 (alleging numerosity). The numerosity requirement is an element of a Title VII claim, not jurisdictional. Arbaugh v. Y & H Corp., 546 U.S. 500, 512–516 (2006). Unlike the allegation concerning notice to Jai, this factual allegation does not suffer from an inferential leap.

25. As stated by EEOC's counsel at oral argument, the gravamen of the case is a "No Spanish" policy allegedly implemented by the employer, Mr. Whitten. Hr'g Tr., Oct. 10, 2019, at 6; see Maldonado v. City of Altus, 433 F.3d 1294 (10th Cir. 2006) (consideration of an English-only policy), overruled on other grounds as recognized by Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006); Hr'g Tr., Oct. 10, 2019, at 6:12–19.

13

That said, the SAC alleges that RW2 (Mr. Whitten as President) acquired the hotel in July 2019, and on July 31, 2019 announced a policy that Spanish was not to be spoken in his presence because he did not understand it. SAC ¶¶ 34–35 (ECF No. 87. EEOC's counsel maintained that the employees were fearful of speaking Spanish because they did not know when they would be in Mr. Whitten's presence. Hr'g Tr., Oct. 10, 2019, at 7:11–25. According to counsel, there was no business necessity for a "No Spanish" policy. In addition, Mr. Whitten asked the employees to anglicize their names. SAC ¶¶ 53, 60 (ECF No. 87) (requiring, e.g., Marcos to refer to himself as "Mark" and Martín to pronounce his name "Martin"); see also Pl.'s Prehr'g Br., Ex. 8 (ECF No. 221) (requiring Susana to call herself "Susan"). As noted in paragraph 12 above, most of the claimants were terminated shortly after a July 31 meeting.

26. The SAC alleges that Mr. Whitten used racial epithets, ridiculed an employee's accent, treated Hispanic and Black employees and customers poorly, and otherwise treated the employees of color differently from White employees. SAC ¶¶ 78–83 (ECF No. 87).

27. The court has considered the EEOC's request for compensatory and punitive damages. The SAC and charging documents make it clear that the policy announced by Mr. Whitten was that Spanish was not to be spoken in his presence for which a case of business necessity seems obvious — no one contends that Mr. Whitten did not have a business necessity to understand what

his employees were saying.  See Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1171 (10th Cir. 2007); 29 C.F.R. § 1606.7(b).

28. In light of the relatively short time frame in which the actions occurred given the abrupt end of the relationship between Mr. Whitten and the charging parties and aggrieved employees, and the stated basis of the gravamen of the SAC, the court will award $35,000 to be distributed by the EEOC.  Hr'g Tr., Oct. 10, 2019, at 19–20.

29. The court declines to award punitive damages.  Punitive damages may be awarded in Title VII cases where "the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  The standard is higher than for compensatory damages.  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999).  The EEOC argues that Mr. Whitten was RW2's agent and that punitive damages are warranted because he admitted asking three employees to modify or "Anglicize" their names and by limiting the use of Spanish.  Pl.'s Prehr'g Br. at 6–7 (ECF No. 87).  The court is not persuaded.

30. The court also declines to award the EEOC injunctive relief.  42 U.S.C. § 2000e–5(g)(1).  At the hearing, the EEOC tendered a proposed injunction which would permanently enjoin the defendants from engaging in unlawful employment practices based upon race, color, and/or national or origin, and retaliation/reprisal.  See also Pl.'s Prehr'g Br. at 8–9 (other injunction terms)

(ECF No. 87). As the EEOC alleged in the Fourth Amended Complaint, RW2 (and for that matter Jai) no longer operate the hotel and "are unable to provide certain relief in this lawsuit, including reinstatement, injunctive relief and other relief," because the hotel now has another owner, SGI. See FAC, Aug. 13, 2018, at ¶ 28 (ECF No. 201). The defendants contend that "RW2 has not conducted any business in New Mexico since 2014 and Jai has not conducted any business in New Mexico since 2016," Def.'s Prehr'g Br. at 2 (ECF No. 222). At the hearing, the EEOC stated that it asks for injunctive relief in every case, and here it seeks injunctive relief "if they do ever come into the state again to operate in the hotel business." Hr'g Tr., Oct. 10, 2019, at 21:23–24.

31. The most important factor in awarding injunctive relief is "whether the facts indicate a danger of future violations . . . ." Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1230 (10th Cir. 1997). Nothing suggests that RW2 (and for that matter Jai) have any plans to operate any hotel or conduct business in New Mexico, hence, the possibility of any recurrent violation is completely speculative and injunctive relief is not warranted. See EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1250–51 (10th Cir. 1999). There must be something more than a conjectural or hypothetical possibility. Id. at 1250 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

A judgment will be entered accordingly.

DATED this 30th day of December 2019, at Santa Fe, New Mexico.

/s/ Paul Kelly, Jr.
United States Circuit Judge
Sitting by Designation